D. H. SCOTT v. J. L. & M. A. DYER.

(Case No. 1409–4291.)

1. HOMESTEAD. — The doctrine heretofore announced in homestead cases, that a homestead necessarily includes a house for a residence or a mansion house, and that the intent to appropriate a homestead should be evidenced by some unmistakable acts showing an intention to carry into execution such intent, has no application to a case where homestead rights are claimed in property which constituted a part of a late homestead, the whole of which had been ' occupied as such, and a part of which, only, including the mansion house, had been sold.

2. SAME.— Hence, when the mansion house was sold, and a part of the homestead ground attached thereto was reserved from sale, with the intention existing in the mind of husband and wife to build and again establish their home on the portion reserved, the reserved portion, though not occupied (when the family has no other place for a home), remains impressed with the homestead character, and is protected from forced sale.

ERROR from Lamar.   Tried below before the Hon. R. R. Gaines.

This was a suit brought by D. H. Scott to recover from J. L. & M. A. Dyer, in an action of trespass to try title, a lot of land in the town of Paris, claiming it under his purchase at sheriff's sale under a judgment and execution more particularly described hereafter, in favor of the plaintiff, against the defendants, as husband and wife. The defense was that the lot was the homestead of the defendants. The cause was submitted to the judge without a jury, who found

his conclusions of facts and of law in writing, and upon which he rendered judgment for the defendants, to which the plaintiff excepted and prosecuted a writ of error, assigning as ground of error that the court erred in holding that the property in controversy was the homestead of defendants, and not subject to plaintiff's judgment and execution.

The district judge trying this case found the law and facts in writing as follows, viz.:

"This cause having been submitted to me upon the pleadings and the evidence, and the plaintiff having requested that I find the issues of fact separately from the conclusions of law, I find that the following are the facts established by the evidence, viz.: That on the 20th day of April, A. D. 1875, plaintiff recovered judgment in the district court of Lamar county, Texas, against defendants, as husband and wife, and against the separate property of M. A. Dyer, defendant, for the sum of $224.66, with an order for execution generally upon the judgment, as well as the said wife's separate property; that an execution generally against the property of defendants in the judgment, and against the said wife's separate property, issued upon said judgment on the 15th day of September, 1875, and was, on the 15th day of September, 1875, levied upon the lot of land described in plaintiff's petition, and that in pursuance of such levy said lot was, on the first Tuesday of October, 1875, sold at the courthouse door of Lamar county by the sheriff of said county, and that plaintiff became purchaser at such sale at the sum of $25, which was credited on the execution, and the said sheriff therefore made him a deed to the same; that defendant M. A. Dyer was the owner of the lot in controversy at the date of the levy and of the sale, as her separate property; that it was part of a lot of about four acres, which was occupied and used as a family residence by defendants as their homestead in the year 1873, and before that time; that during said year they sold all of said lot except the part in controversy; that the portion so sold embraced the dwelling-house and all other improvements, except part of an orchard which was on the land in controversy, and was inclosed with the other improvements. That defendants lived a year after the sale with a son of the wife in the country, and returned to Paris, where they have lived ever since, but never acquired any other homestead; that when they sold part of the lot they reserved the part in controversy as a homestead, intending to improve it for that purpose; that this intention continued to exist until the date of the levy and of the sale, but the land in controversy, though occasionally cultivated, was never occu-

pied as a residence by defendants after the sale of the other part of the lot; that up to the date of levy no improvements or preparations for the same had been made upon the premises, but that, on the contrary, the inclosure had been partially destroyed at that date, and the premises left uninclosed upon one side.

"The foregoing being the facts of the case, I am of opinion that the lot in controversy having been part of the homestead of defendants, and having been reserved at the sale of the other part of their residence, for the purpose of making it a family residence, and that this purpose never having been abandoned, nor another homestead acquired, I am of opinion that it continued their homestead until the date of the sheriff's sale; that such sale, therefore, passed no title, and that judgment ought, therefore, to be given for defendants. It is therefore adjudged accordingly." -   ·

*Hale & Scott*, for plaintiff in error.

No briefs for defendants in error on file.

WALKER, P. J. COM. APP.— There being no statement of facts in the record, the error assigned presents the question whether the facts stated in the finding of the court warrant the legal conclusions deduced from them by the judgment.

The premises, in their entirety previous to the sale and conveyance of that portion of the four-acre lot described in the finding of the judge, constituted, it is conceded, the homestead of the defendants. It cannot be doubted that the defendants had the right to limit the extent of their homestead by conveying away a part and reserving the remainder of what constituted the original homestead premises. This, according to the finding, they attempted to accomplish. They did "reserve as a homestead" the unsold portion, and it was then fully impressed with the essential characteristics of an actual subsisting homestead, wanting in nothing save the requisite shelter for habitation — such as a house or cabin.

Although it is said that "a homestead necessarily includes the idea of a house for residence or mansion house" (Franklin *v.* Coffee, 18 Tex., 416); and also that the intent to appropriate a homestead should be evidenced by some unmistakable acts showing an intention to carry into execution such intent, or some sufficient excuse should be shown for the absence of such acts, when the homestead right is asserted against a purchaser of the land before actual occupation of it as a homestead (Anderson *v.* McKay, 30 Tex., 186;

Moreland v. Barnhart, 44 Tex., 275), it is to be observed that these maxims and rules have been announced and applied in cases where the homestead claimant had not by actual domiciliation on the land, or by other acts evidencing clearly and unmistakably his intention to establish his homestead on the land, fixed beyond question a homestead right.

The case of Franklin v. Coffee was one of that kind, and there it was said: "Nor would it be necessary, to secure the exemption, that a house should be built or improvements made. But there must be a preparation to improve, and this must be of such a character and to such an extent as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home."

In all of this class of cases it was a question whether a homestead character had at any time been impressed upon the land; and the existence or absence of houses, improvements or other palpable *indicia* of absolute intention, designation and appropriation of the land for homestead purposes became the subjects of discussion as affording proper tests to determine the *status* of the property in controversy. But where, as in this case, the entire premises had but recently comparatively been the homestead of the defendants, whether the portion of it which was reserved in the sale of the improved part continued to maintain the homestead quality would not, we think, depend upon the test to which we have just referred, but rather upon the ascertainment of the intention of the defendants to continue to use and occupy it as a homestead. If they meant to abandon, and did abandon it as such, then, of course, it ceased to be their homestead. Mere absence from the premises, nor anything short of a total relinquishment or abandonment with the intention of not to again claim it as a homestead, will not subject it to forced sale. Austin v. Towns, 10 Tex., 24. The defendants did not occupy it as a residence after the sale of a part of it, though it was occasionally used by defendants in the way of cultivation. They never acquired any other place for a homestead, and they had not ceased to occupy the lot in controversy as a homestead more than about a year and eight months, one year of which period they had resided in the country with a son of Mrs. Dyer; the remaining time they had lived in the town of Paris. These facts are not inconsistent with an intention to resume at their convenience the land in controversy as their dwelling place.

The finding of the judge upon what must be taken, in the absence of a statement of facts, to be full and sufficient evidence, " that when

they sold part of the lot they reserved the part in controversy as a homestead, intending to improve it for that purpose, and that that intention continued to exist until the date of the levy and of the sale," negatives the idea of abandonment, and under all the circumstances and facts of the case, we are of the opinion that the land in controversy constituted the homestead of the defendants and was exempt from forced sale. An old homestead will not be considered abandoned before the acquisition of a new one, except upon clear and conclusive proof of an abandonment with an intention not to return. Shepherd v. Cassidy, 20 Tex., 24; Gouhenant v. Cockrell, 20 Tex., 96. The finding of the judge above quoted sets at rest any question of abandonment, and we conclude with him, that the judgment of the court ought to be for the defendants, and therefore that the judgment of the court below ought to be affirmed.

AFFIRMED.

[Opinion adopted October 9, 1883.]