CHARLES H. MOALE, et al. vs. THE MAYOR AND CITY COUNCIL OF BALTIMORE, and HENRY S. TAYLOR, City Collector.

*Liability for Tax for Paving streets—Construction of Act of 1874, ch. 218, and Ordinances of the Mayor and City Council of Baltimore relating to Paving streets—Front foot rule—Cross streets—Right of Property holders to elect as to Materials used in Paving streets—Interest—Limitations—Demurrer—Practice in Equity.*

By the Act of 1874, ch. 218, the Mayor and City Council of Baltimore was empowered to provide by ordinance for the paving, grading, and curbing of the streets in the city, without application therefor by the owners of the property binding on such streets, and to assess "the cost of any such work in whole or in part, *pro rata,* upon the property binding on such street, lane or alley, or part thereof, and for collecting such assessments as other city taxes are collected." Under the power thus conferred the Mayor and City Council passed in 1874, ordinances Nos. 63 and 88, for the paving of Hanover street. The first section of ordinance No. 88, which was a re-enactment of ordinance No. 63, for the correction of an error therein, provides: "That the City Commissioner be and he is hereby authorized and directed to have Hanover street from Clement street to the shore of the middle branch of the Patapsco River, graded, paved and curbed, and to assess upon the owners of property on said street between the streets named, their proportionate part of the expenses of said paving, grading and curbing, in accordance with existing ordinances and Act of Assembly." The second section of ordinance No. 63, which was not repealed, provides that "the collector of the city be and he is hereby directed to collect said expenses when so assessed, from said property owners as other city taxes are collected." On a bill for an injunction brought by owners of property on Hanover street against the city, to restrain the collection of the tax for paving said street, it was HELD :

1st. That while it is true the Act of 1874, directs that the assessment be made *pro rata* on the *property* fronting on the street paved, that was only intended to indicate the proportion in which the *owners*

of property on the street were to be called on to contribute to the expenses, and the above ordinances were not rendered void by providing for the assessment of the expenses upon, and their collection from, the *owners.*

2nd. That the tax was intended to be, and ·was a lien on the property; and the owner to that extent was answerable for its payment as for a personal debt of any other kind.

3rd. That there was no such delegation of power by the Mayor and City Council to the City Commissioner as rendered the ordinance invalid.

The bill alleged that *of the part* of the complainants' property fronting on the east side of the street, which was in all six hundred and twenty feet, nine inches, one hundred and twenty feet *thereof* consisted of a strip forming a triangle near the intersection of McComas street with Hanover street and was very narrow, being on one side only twelve feet deep; and that this had been assessed by the front foot rule as much as the rest which was from one to two hundred feet deep. HELD:

1st. That this did not present a case in which, by the application of the front foot rule of apportionment, a portion of the property fronting on the street paved had been taxed beyond its value, resulting in the destruction of the property. If it did it would raise a very grave question whether the owner could be forced to pay the assessment in excess of such value, or be compelled to submit to a rule which in effect took his whole property from him.

2nd. That by the showing of the bill it was one continuous lot and frontage, and the assessment must be treated as made upon the whole lot with full respect to its full situation.

3rd. That it was the whole lot which was bound for the assessment on it as a whole, and part of it could not be excepted and exempted from the burden. Nor could the larger part of it be released from any part of the tax because *a part of the lot,* if assessed by itself, would present a case of extreme hardship, if not fatal to the rule in such case.

The complainants were the heirs of R. H. M., who died in 1864. The assessment was made in 1875, and was stated to be made to "the estate of R. H. M." HELD:

1st. That as the bill did not allege there had been a partition of the property, and the suit was joint, it might be assumed that the

property was still enjoyed in common. But however that might be, it was too narrow a point and too refined and technical, for a Court of equity to declare that the city should lose the tax, and the complainants enjoy the benefits of the improvement without paying anything therefor, by reason of such imperfect designation of the person or property taxed.

2nd. That the language used was manifestly adopted, not only to designate the property, but also that the former owner was dead, and that there were successors in title whom it was more convenient to designate in mass, without separately naming them.

3rd. That as the assessment, after charging "the estate of R. H. M." as debtor, proceeded to describe the property particularly by metes and bounds, the requirements of the Act of Assembly, strictly considered, had not been violated by the ordinance, and whether the person or the property was to be assessed, in this case it was sufficiently done on both.

At the time the ordinance was passed under which the paving in question was done, Ordinance No. 65 of 1867, was in force, and provided that "whenever application shall be made to the City Commissioner to have paved or repaved any street, lane or alley of the City of Baltimore, or whenever said paving shall be done by virtue of any ordinance of the Mayor and City Council of Baltimore, it shall be optional with the owners of a majority of the front feet of ground binding upon said street, &c.; whether the said paving or repaving shall be with stone or what is known as the Nicholson or other improved pavement." HELD:

1st. That it was intended by this ordinance to secure to the owners of a majority of the front feet on the street to be paved, the option of the materials with which the paving should be done. But as no mode of giving them notice was provided, and no method was prescribed for getting an exercise of their right in the matter, there was no duty resting on the City Commissioner of taking any step towards securing their election.

2nd. That it was for the property holders, within a reasonable time to have taken the initiative in expressing their choice, if they had any, and communicating it to the City Commissioner, who would then have been bound by it.

3rd. That in the absence of such action and choice the City Commissioner was justified in assuming it waived, and in proceeding to

Moale, *et al.* *vs.* Mayor, &c., of Baltimore, *et al.*

use such material as the general ordinance applicable to the case required him to use.

By Ordinance 44, of 1874, sec. 16, which also was in force when the ordinances for the paving of Hanover street were passed, it is provided "that whenever any street, lane or alley has been graded, gravelled, shelled, curbed or paved in pursuance of this ordinance, the City Register shall pay the expense of the cross streets, on the order of the City Commissioner." And by sec. 8 of the same ordinance, provision is made for collecting from the property owners a commission of three per cent. of the whole cost, *exclusive of cross streets*, for collecting the assessment or tax. It was alleged in the bill of complaint, that that part of Hanover street on which the paving in question was done, was intersected by several streets, the cost of paving which, and the tax of three per cent. thereon for collection, was erroneously charged against the complainants and included in the sum sought to be collected from them.   HELD :

1st. That the provisions of said Ordinance No. 44, were applicable to the paving of Hanover street, and was not confined to the cases of streets paved on the application of the property owners.

2nd. That the complainants were chargeable with interest, but the same was only to be computed on the amount properly chargeable against them or their property.

3rd. That the Statute of Limitations interposed no bar to the defendants' claim.

The defendants filed a general demurrer to the bill, which was ruled good by the Court below, and a decree was passed dismissing the bill.   HELD :

That the demurrer was too general and ought to have been overruled ; and the defendants required to answer the allegations respecting the cross streets and the assessments for paving them, that issue might be taken and the question decided according to the fact.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROBBINSON, IRVING, RITCHIE, and BRYAN, J.

*Bradley S. Johnson,* and *Bradley T. Johnson,* for the appellants.

The Act of 1874, chap. 218, authorizes the Mayor, &c., to assess the costs of paving on the property binding on the street paved. Ordinance No. 88 of 1874 directs the City Commissioner to assess such costs on the owners of the property binding on the street.

The ordinance is not a proper execution of the power. It must be strictly pursued. *Burns vs. Mayor, &c.,* 48 *Md.,* 198; 2 *Dillon on Municipal Corporations, sec.* 637, *note* 2; *Henderson vs. Mayor, &c., of Baltimore,* 8 *Md.,* 352; *Swann, et al. vs. Mayor, &c., of Cumberland,* 8 *Gill,* 150; 1 *Dillon on Municipal Corporations, sec.* 660, *note and section* 618; *Horn vs. Mayor, &c.,* 30 *Md.,* 218.

The power to assess being on *property,* it cannot be exercised to assess on *persons.* *West vs. Dowman,* 29 *Weekly Reporter, page* 6; *Neenan vs. Smith,* 50 *Mo.,* 525, 528; *Cooley on Taxation,* 470, 471, *note* 2.

A local tax can only be assessed on local property improved. *Carlin vs. Cavender,* 56 *Mo.,* 286; *City of Carondelet, use, &c. vs. Picot,* 38 *Mo.,* 125.

The Act of 1874, ch. 218, changed the whole theory of taxation for local improvements, and adopted the law as laid down by *Cooley,* that *local property alone must pay for local improvements.* Before then, the purpose of the law was to give the majority of owners the right to decide when their property should be improved. When the majority of owners decided that improvements ought to be made, then all the owners were obliged to pay their *pro rata* share of the expense. The public local law shows this purpose. *Secs.* 840, 841, 844, 845, 847, 848, 849, 850, 851, 855, and 861—all gave the power to decide when improvements should be made, to the majority of owners, and when that majority did so decide, then all the owners were to pay.

The Act of 1870, chs. 282 and 322, secured this same right to owners.

All these sections and both of these Acts were repealed by the Act of 1874, ch. 218. But sec. 852, Public Local Laws, was not repealed. It gives the city the power to pass ordinances for paving footways, and to impose the expense on the *property fronting on such footways.* It is consistent with the purpose of the Act of 1874, ch. 218, and was therefore left in force.

Under the Code, assessments could only be made with the consent of the property owners owning a majority of the property, and then such majority could only bind the minority for one-half or two-thirds of the cost. But in 1874, the power was transferred from property to suffrage. Suffrage was given absolute power over all property adjacent—not over all property everywhere. It could bind such property—but not the persons. Apply this principle to this case. A part of the property improved has been destroyed absolutely. The property fronts $629\frac{1}{2}$ feet on the east side of Hanover street, and $1339\frac{1}{2}$ feet on the West side thereof. Of that on the east side 120 feet is a narrow strip twelve feet deep at one end, constantly decreasing to a point at the other, and which is absolutely not worth the $4.05 per foot assessed to the estate of Randall H. Moale for paving in front of it. It is so charged in the bill, and admitted by the demurrer.

As much is assessed against the estate of Moale for improving this property out of existence as for improving lots from one hundred to two hundred feet deep.

Yet, under this assessment the city is about to sell the two hundred feet lots for destroying the twelve foot lots, and the lots having a depth from twelve feet to nothing, and claims the right to sell the property on the *west side* of Hanover street, for improving out of existence the property on the *east side thereof.*

The right to levy assessments for paving is under the taxing power. Such power involves the discretion to fix the amount of taxes, and must be exercised by the Mayor,

&c., and cannot be delegated. The power is—the city "may provide by ordinance for paving *any* street, &c." The ordinance is—" the City Commissioner is directed to pave, &c." The whole discretion, as to amount of tax, is committed to him without limit. Such delegation of discretion is void.

Ordinance No. 80, of 1874, rejected in *Scharf's Case,* 54 *Md.,* 499, and affirmed 56 *Md.,* 50, directs the street to be paved with Belgian blocks.

Ordinance No. 68, of 1878, supported in *Johns Hopkins Hospital Case,* 56 *Md.,* 1, specified the kind of pavement, and the' manner the work was to be done, and expense assessed. *Birdsall vs. Clark, et al.,* 73 *N. Y.,* 73 ; *City of Louisville vs. Louisville Rolling Mill Co.,* 3 *Bush,* 416, 423 ; *Davidson vs. New Orleans,* 96 *U. S.,* 104 ; *City of Philadelphia vs. Miller,* 49 *Pa.,* 440 ; *In the Matter of the Trustees of N. Y. P. E. Public School,* 31 *N. Y.,* 574, *approved in Johns Hopkins Hospital Case,* 56 *Md.,* 1, 30, 31 ; *Ireland vs. City of Rochester,* 51 *Barb.,* 414 ; *Stuart vs. Palmer,* 74 *N. Y.,* 183 ; *Thompson vs. Schermerhorn,* 6 *N. Y.,* 92 ; *Scharf's Case,* 54 *Md.,* 522, *as to improper delegation of discretion ; Cooley's Constitutional Limitations, secs.* 204-5 ; *Smith vs. Morse, et al.,* 2 *California,* 524 ; *City of Oakland vs. Carpentier, et al.,* 13 *California,* 540 ; *White vs. Nashville, &c., R. R. Co.,* 7 *Heiskell,* 520 ; *City of East St. Louis vs. Wehrung,* 50 *Ill.,* 28.

Power to tax not to be delegated. The power to determine the plan, extent and cost of a municipal improvement is the power to tax. *Cooley on Taxation,* 49 *and notes ; Cooley on Constitutional Limitations, secs.* 117, 205, *and Cases ; 1 Dillon's Municipal Corporations, secs.* 60, 567, 618, *and notes ; City of St. Louis, &c., use, &c. vs. Clemens,* 52 *Missouri,* 133 ; *Hydes and Goose, Assignees vs. Joyes,* 4 *Bush,* 464 ; *People vs. Clark,* 47 *California,* 456. The Legislature must prescribe the rule of taxation, and to refer the making of the rule to another authority would

be in excess of legislative power. *Cooley on Taxation,* 50; *People vs. Mayor, &c., of Brooklyn,* 4 *Comstock,* 426; *McBean, et al. vs. Chandler, et al.,* 9 *Heiskell, Tenn.,* 366–8.

The power to assess the expense on the property is a local legislative power. *Goszler vs. The Corporation of Georgetown,* 6 *Wheaton,* 595 ; *State, ex rel. McClellan vs. Graves, et al.,* 19 *Md.,* 373.

The local legislative power can only be exercised by ordinance. *Potter's Dwarris on Statutes,* sec. 375. The ordinance must be an adequate exercise of the power. *Sedgwick on Construction of Statutory and Municipal Law,* 397, 399.

The ordinance requires the cost to be assessed to the property owner. It is assessed to the estate of Moale, when the complainants are the property owners. The assessment, therefore, does not pursue the ordinance. It is made under section 9 of No. 44 of 1874, and No. 44 is the execution of the power under a different section of the Act of 1874.

If this work were done under Ordinance 44 of 1874, the expense of the cross streets was to be paid by the city. It is here charged to the estate of Moale.

The paving was to be done under *existing ordinances.* The only ones were No. 44 of 1874, and No. 65 of 1867. Under Ordinance No. 44 of 1874, no paving can be done until the property holders make application. They made none in this case.

Under No. 65 of 1867, the owner of the majority of front feet had the right to decide and direct the quality of pavement, and thus determine the cost of paving. No such direction was made by them, nor were they even given an opportunity or notice to decide or direct.

It is supposed that the cases of *Gould, Trustee vs. Mayor, &c.,* 58 *Md.,* 49, and 59 *Md.,* 380, control this case because they arose under the same ordinance and the

same assessment. But the questions herein raised were not before the Court, nor does it appear that they could have been raised on the record in those cases. They were questions as to the liability of a fund in the hands of a Court of equity for the paving tax assessed against the estate of Gould. The assessment was not before the Court, nor was the Ordinance No. 88 of 1874. Only one section of that ordinance was considered, its second section, being Ordinance No. 63 of 1874, not having been presented.

In the case in 58 *Md.,* the Court has the distinction between an assessment on *persons* and an assessment on *property* clearly before the judicial mind, for it everywhere speaks of the "*assessment on property* on Hanover street," p. 52, "of two several assessments upon two different pieces of property," and of "the property upon which the assessment was made."

The property was sold and the Court held that the assessment followed the proceeds of sale. It says that the duty of the trustees was to pay "all *assessments binding on the property.*" The case goes upon the principal that local property is alone bound for local improvements. The decision shows that the Court supposed that the Act of 1874 had been complied with, and that the expenses had been levied on the property binding on the street paved.

The assessment shows that it is on "the persons liable to pay the tax, with the amounts charged to them respectively," and is under sec. 9 of Ordinance No. 44 of 1874.

*Gould's Case,* in 59 *Md.,* arises on the same facts. But the only question passed on, discussed and decided, is whether a paving tax is such a tax as must be "collected as other city taxes are collected," within four years.

The Court decides that a local tax is different from a general tax, and that the Act of 1874, ch. 218, provides that the city shall provide by ordinance for collecting paving assessments, as other city taxes are collected; that the Act of 1861, ch. 94, provides only that the general

taxes shall be collected within four years from the date of levy, and that because the city has passed no ordinance providing that paving taxes shall be collected as other city taxes, therefore the bar of limitations does not apply.

The Act of 1861 only applies to general taxes.

The city, say this Court, was authorized to provide by ordinance for putting paving taxes on the exact footing of the general taxes, and inasmuch as it had passed no such ordinance, therefore they were not on the footing of general taxes, and were not barred.

The Court cannot know what ordinances were passed, unless they are in the record. Ordinance No. 63 of 1874, was not in that record.

That ordinance does make the precise provision that these expenses of paving Hanover street shall be collected as other city taxes are collected.

By it the expense of paving Hanover street is to be collected as other city taxes are collected, and this case comes directly within the decision in 59 *Md.* Thus the city has by ordinance placed these paving assessments precisely upon the footing of the general taxes, and they are, therefore, barred by the lapse of four years.

The fact that this Court, in the record presented to them, decided that Gould's estate should pay assessments made under Ordinance No. 88, cannot estop it from deciding this cause on the new facts presented here.

The *new fact is*, that the assessment was not in pursuance of the Act of 1874, ch. 218. The warrant of assessment, never before presented to the Court, shows that the charge was made against *persons,* and in no way against *property,* and is in direct conflict with the Act of 1874. If this assessment stands, and the property seized, does not sell for enough to pay it, then the personal and real property of complainants, wherever situate in this State, may be sold to pay the deficiency. Their property may be seized in any State or any county to pay it.

Moale, *et al. vs.* Mayor, &c., of Baltimore, *et al.*

*I. Parker Veasey,* City Solicitor and *John Prentiss Poe,* City Counsellor, for the appellees.

The Ordinances Nos. 63 and 88, of 1874, are entirely valid. *Scharf's Case,* 56 *Md.,* 50.

The assessments upon the property in question were fairly and properly made, and constitute a lien upon it. *Mayor, &c., of Baltimore vs. Scharf, et al.,* 56 *Md.,* 50; *Mayor, &c. vs. Johns Hopkins Hospital, et al.,* 56 *Md.,* 1; *Dashiell vs. Mayor, &c.,* 45 *Md.,* 615 *and* 631.

The claim of the appellees is not barred by limitations. *Gould, Trustee vs. Mayor and City Council,* 58 *Md.,* 48; *Ibid,* 59 *Md.,* 378.

All the questions presented by this record have heretofore been fully considered and settled, and the decision of the Court below is in strict accordance with the law as finally adjudicated by this Court. The decree should therefore be affirmed.

IRVING, J., delivered the opinion of the Court.

The bill in this case was for an injunction to restrain the city authorities from selling the property of the complainants, the heirs-at-law of Randall H. Moale, for the payment of certain paving taxes assessed to the estate of Randall H. Moale, and claimed by the city to be a lien on the property. Demurrer was interposed, and the case was heard by the Circuit Court of Baltimore City, by consent of parties, on bill and demurrer, without the granting of a preliminary injunction. After hearing, the bill was dismissed; and this appeal is from the decree dismissing the bill.

By the Act of Assembly of 1874, ch. 218, the Mayor and City Council of Baltimore was empowered to provide, by ordinance, for the paving, grading, and kerbing of the streets in the city, without application therefor by the owners of the property binding on such street, and to assess "the cost of any such work in whole or in part *pro*

*rata,* upon the property binding on such street, lane or alley, or part thereof, and for collecting such assessments as other city taxes are collected." In pursuance of this authority, and in attempted execution of the power conferred, the Mayor and City Council passed, in 1874, Ordinance number 63, and Ordinance number 88, for the paving of Hanover street. The first section of Ordinance No. 63 being found in error in providing for the paving of *Hammond* street instead of *Hanover* street, provided for in the title, that section was repealed by Ordinance No. 88 of same year, and a new section was substituted. That section is as follows: " That the City Commissioner be, and he is hereby, authorized and directed to have Hanover street, from Clement street to the shore of the middle branch of the Patapsco river, graded, paved, and kerbed, and to assess upon the owners of property on said street, between the streets named, their proportional part of the expenses of said paving, grading, and kerbing, in accordance with existing ordinances and Acts of Assembly." The second section of the Ordinance 63, which was not repealed, and is to be read with the section just quoted, is as follows: "And be it further enacted and ordained, that the collector of the city be, and he is hereby, directed to collect said expenses, when so assessed, from said property owners as other city taxes are collected."

1. The appellants contend that these ordinances for the paving of Hanover street are void. *First,* because the ordinance is not, as they insist, a proper execution of the power granted to the Mayor and City Council by the Legislature in chapter 218 of the Acts of 1874. It being necessary to strictly pursue the power granted, they insist the Council failed to do so, by directing the assessment to be made on the *person,* whereas the Legislature, in the Act, only authorized them to assess the expenses of paving on the *property* binding on the street, and in doing as they have, they have not confined the assessment to local prop-

erty. *Secondly,* because the Mayor and City Council have delegated powers belonging only to them to the City Commissioner; and lastly, because of the front foot rule of assessment.

The ordinances upheld in *Scharf's Case,* 56 *Md.,* 50, and in the *Johns Hopkins Hospital Case,* 56 *Md.,* 1, are so nearly identical with the ordinance now attacked, it would seem that those cases ought to be conclusive against all the objections alleged as invalidating the ordinance. It is true that the Act of 1874 does direct that the assessment be made *pro rata* on the *property* fronting on the street paved; but that was only intended to indicate the proportion in which the owners of property on the street were to be called on to contribute to the expense. It was to be apportioned ratably on the property on the street. It is difficult to see how the property could be assessed except as belonging to *somebody,* and of course *that somebody* would be the person to pay for the property, for the property could not pay for itself. It is undoubtedly a personal debt to the extent of the property charged with the tax. The tax was intended to be, and is, a lien on the property; and the owner, to that extent, is answerable for its payment, as for a personal debt of any other kind; but we do not wish to be understood, that his liability for that tax would extend beyond the value of the property taxed for the improvement. We do not understand that question, last suggested, to be involved, but we deem it proper to say we express no opinion on that aspect of the question until it arises. That it is a personal liability, we think the cases of *Dashiell vs. Mayor,* 45 *Md.,* 430; the *Gould Cases* in 58 *Md.,* 48, and 59 *Md.,* 378, and the case of *Handy vs. Collins, Executrix,* 60 *Md.* 229, put beyond controversy. With respect to the contention, that the delegation of power by the Mayor and City Council to the City Commissioner is such as to render the ordinance void, we need only say that the last decision of the *Scharf Case*

and the decision in the *Johns Hopkins Hospital Case,* whereby the first opinion was *set aside* and a new view adopted by a majority of the Court, establish that the ordinance in question is not infirm on that account; and that neither the Act of Assembly of 1874, nor the ordinance is obnoxious to constitutional objection. In the *first* opinion the position was distinctly taken, and argued out by the writer of this opinion, that there was such delegation of power to the City Commissioner as did invalidate the ordinance. That view of the case is not specially adverted to in the second opinion, which finally settled the case ; but inasmuch as the question was raised, and was necessary to the full decision of the case, and the ordinance could not be supported without concluding that objection to be untenable, it must be regarded as no longer an open question. The ordinance there and here, it will be seen in the further discussion of the case, are saved from that objection in the same way.

Again, it is objected, that the ordinance cannot be supported because the front foot rule of apportionment has been adopted, and that in this case, by the application of the front foot rule, a portion of the property of the complainants, fronting on the street paved, has been taxed beyond its value, resulting in the destruction of the property, which natural right will not permit. We do not understand the bill to present such a case as the argument suggests. If it did, it would raise a very grave question, whether the owner could be forced to pay the assessment in excess of such value, or be compelled to submit to a rule which, in effect, took his whole property from him. The suggestion of the possibility of such case illustrates the possible hardship of the rule, but we do not think this such a case. The bill alleges that *of the part* fronting on the *east* side of the street, which is in all six hundred and twenty feet and nine inches, one hundred and twenty feet *thereof* consists of a strip forming a triangle near the in-

tersection of McComas street with Hanover street, and is very narrow, being on one side only twelve feet deep ; and that this has been assessed by that rule as much as the rest, which is from one to two hundred feet deep. By the very showing of the bill, it is one continuous lot and frontage, and the assessment has been made upon the whole lot with full respect, no doubt, to its full situation, and it must be so treated. It is that whole lot which is bound for the assessment on it, as a whole ; and part of it cannot be excepted, and exempted from the burden. Nor can the larger part of it be released from any part of the tax, because *a part* of *the lot*, if assessed by itself, would present a case of extreme hardship, if not fatal to the rule in such case. For aught that appears in this case we see no reason to disturb the rule adopted and approved in the cases cited.

2. Several exceptions are taken to the method of assessment by the City Commissioner, which are relied on to defeat the claim in whole or in part. *First*, it is contended that the ordinance requires the cost to be assessed on the property owner, whereas the assessment is made to " the estate of Randall H. Moale." This contention is made on the assumption that we might overrule appellants' first objections, as we have done. The assessment was made in 1875. Randall H. Moale died in 1864. The bill does not allege there had been a partition of the property, and from that fact, and the suit being joint, possibly we might be justified in supposing the property still enjoyed in common. But, however that may be, it would seem to be too narrow a point, and entirely too refined, and inequitably technical for a Court of equity to declare that the city shall lose the tax and the appellants enjoy the benefits of the improvement without paying anything therefor, by reason of such imperfect designation of the person or property taxed. In common parlance " the estate " is not only understood to indicate the property,

but the takers of it; and when it is said that an estate is charged with the payment of any claim, it is well understood that those who are to take, with the incumbrance, are to pay it, in due proportion among them.   Manifestly this language was adopted not only to designate the property, but also that the former owner was dead, and that there were successors in title whom it was more convenient to designate in mass without separately naming them. After charging "the estate of Randall H. Moale" as debtor, the assessment proceeds to describe the property particularly, and by metes and bounds.   Thus it appears that the requirements of the Act of Assembly, strictly considered, have not been violated by the ordinance, and that whether the person or the property is to be assessed, in this case it is sufficiently done on both.

*Secondly.* The appellants insist that the *assessment* is void and cannot be enforced, because the property holders along the line of the street, and fronting thereon, were not afforded an opportunity to select the kind of material with which the paving should be done.   The ordinance under which this paving was done, directs the owners to be assessed "their proportional part of the expenses of said paving, grading, shelling, and kerbing, in accordance with *existing ordinances* and the Act of Assembly."

The bill charges that the only existing ordinances in force on the subject, at the time this ordinance was passed, are Ordinance No. 65 of the ordinances of 1867, and Ordinance 44 of the ordinances of 1874.   By Ordinance No. 65 of 1867, it is provided that, "Whenever application shall be made to the City Commissioner to have paved or repaved any street, lane, or alley of the City of Baltimore, or whenever said paving shall be done by virtue of any ordinance of the Mayor and City Council of Baltimore, it shall be optional with the owners of a majority of the front foot of ground binding upon said street, &c., whether the said paving or repaving shall be done with

stone or what is known as the Nicholson or other improved pavement."

It cannot be doubted that this ordinance was intended to secure to the owners of a majority of the front feet on the street to be paved, the option of material with which the paving shall be done.   But it is equally clear that no mode of giving them notice is provided for, nor any method prescribed for getting an exercise of their right in the matter.   There would, therefore, seem to be no duty resting on the City Commissioner of taking any step towards securing their election.   His sole duty would be to act in accordance with their option when properly and certainly signified to him.   He was to be informed if they had any choice.   Being given an option, the active measures to secure an expression of it rested on the property owners on the street.   Some one or more of them, within a reasonable time, should have taken the initiative, and having secured, in some way, an election to be made, it should have been communicated to the City Commissioner ; and in that case he would be bound by it.   In the absence of such action and choice, the City Commissioner was justified in assuming it waived, and in proceeding to use such material as the general ordinance applicable to the case required him to use.

*Thirdly.* We come now to consider a more serious objection to the City's claim, though, in our view, it only diminishes the amount which the appellants or their property on the street must pay.   By Ordinance 44 of 1874, section 16, it is provided " that whenever any street, lane, or alley has been graded, gravelled, shelled, kerbed, or paved, in pursuance of this ordinance, the City Register shall pay the expense of the cross streets on the order of the City Commissioner."   And by section 8 of the same ordinance, provision is made for collecting from the property owners a commission of three per cent. of the whole cost, *exclusive of cross streets,* for collecting the assessment or tax.   It is

charged in the complainants' bill that Hanover street, between Clement street and the middle branch of the Patapsco river, (which portion of the street was by the ordinance ordered to be paved,) is intersected by Winder street, McComas street, Donaldson street, and Jefferson street, each of which is sixty feet wide ; and that of the cost of paving these cross streets twenty-four hundred and forty-two dollars and the tax of three per centum thereon for collection, being the sum of seventy-three dollars and twenty-six cents, making a total of twenty-five hundred and fifteen dollars and twenty-six cents has been erroneously charged against the complainants, and is included in the sum sought to be collected by the threatened sale of appellants' property.   The contention of the appellants, that this charge is erroneous, rests on the language of the Ordinances 63 and 88 of 1874, directing the paving and assessment to be done " in accordance with existing ordinances and the Act of Assembly ;" and the fact, that the only existing ordinances, in force at that time, which could control the matter in any way, were Ordinances 65 of 1867, and 44 of 1874.

Obviously it was the intention of the Council to give the City Commissioner some guide in doing the work, and in the assessment, and not to leave the whole matter to his unlimited discretion ; otherwise that language would have been wholly omitted.   In *Scharf's Case*, (54 *Md.*, 522,) the ordinance, *in terms*, directed the paving and assessment to be done according to Ordinance 44 of 1874.   A like provision was made in the ordinance for paving Pratt street, which was the ordinance passed upon in the *Johns Hopkins Hospital Case*, (56 *Md.*, 1.)   The fact that this ordinance was made applicable to the paving ordered in those instances, shows there is no reason why the provisions thereof may not have been intended to control in this case, and may not have been meant by the language, " existing ordinances."   The argument that it cannot ap-

ply *because* that ordinance is only made for cases where the owners along the line of the street apply for the paving, cannot be sound.

The ordinance does so read, but if the provisions are just in the case of application, they certainly are when the city does the work without application; and if there was good reason for applying its provisions in the instances cited, there would seem to be greater reason for applying them here. If it was not right to put the costs of the cross streets on the owners applying for the paving of a street, (which the ordinance by its sixteenth section plainly adjudges,) *a fortiori*, it cannot be right to put it on the owners along the street when the city does the work unasked, and it may be against the wish of the property owners. There being no other ordinance, except Ordinance 44 of 1874, on the subject, it is reasonable to suppose that ordinance was meant to apply. The sixteenth section of Ordinance 44 requires the city to pay the cost of paving the cross streets. This provision is so eminently just and proper, the Council must be supposed to have intended to assume the cost of cross street paving in this instance, and by the language relied on by appellants. If there were several ordinances making inconsistent regulations, so that it could not certainly be known which was intended, we might plausibly be asked to declare the ordinance void for uncertainty; but there being no such difficulty, as there are but two ordinances which could possibly apply, and they being perfectly consistent, there seems to be no escape from giving them application under the phrase "existing ordinances." We have already considered Ordinance 65 of 1867; and are now considering the effect of the other, or Ordinance 44 of 1874, controlling the assessment. The Commissioner was certainly not intended to be left to act at will. If that were the case it might be seriously doubted if the ordinance was valid; and it would be hard to escape the conclusion that there was

such delegation of power to the City Commissioner as would render it void. In the cases already referred to and cited, the ordinances were upheld, notwithstanding the contention that there was delegation of power; and the plain reason for sustaining the ordinances was that Ordinance 44, being adopted as the guide, it declared the proportion of assessment and method of procedure, and the City Commissioner's duty was merely ministerial, to execute what the Council had determined to be done. The view we take of this case brings it within the same reason. Directing the work and assessment to be done and made in accordance " with existing ordinances," is a direction to follow Ordinance 44 of 1874. In it only can be found warrant for adding a per centum for collecting the tax. If authority for that, it should be pursued throughout. What we have said on this subject is on the assumption that the cross streets have been opened or ordered by the City Council, as we understand the allegation, which the demurrer admits. Otherwise no allegation, we think, would have been made. As there is some ambiguity in the averments, it is proper to add, that if, upon answer and proof, it appears there are no such cross streets in existence, and the property is all the complainants', then the Court will decree according to the fact, and no abatement will be made.

4. In respect to the objection on account of the charge for interest on the unpaid assessments, it is only necessary to refer to the case of *Bernei vs. The Mayor and City Council*, 56 *Md.*, 351. That case establishes that interest may be charged in the discretion of the tribunal passing on the claim. We see no reason for refusing it after the long delay in paying the sum actually due. But of course it should only be computed on the amount really chargeable against the complainants and their property.

5. With respect to the Statute of Limitations which has been relied on as a bar, we need only say that we think

the *Gould Cases,* already cited, conclusively settle the question against the appellants, and the Statute interposes no bar.

From what we have said, it is apparent that we think the demurrer was too general and ought to have been overruled. The defendants ought to have been permitted to answer with respect to the allegation respecting the cross streets and the assessments for paving them; that issue may be taken, and the question decided according to the fact. For this reason the decree dismissing the bill will be reversed, and the cause will be remanded, to the end that a decree may pass directing an injunction to issue restraining the city authorities from collecting in any way so much of the claim made as consists of cost of paving the cross streets, interest thereon, and commissions added for collecting that which is excluded; and permitting the appellees to proceed with the collection of the residue of their claim. The costs of both Courts must be paid by the appellees.

*Decree reversed, and* ·
*cause remanded.*