**VAUGHAN et al. v. STERLING NAT. BANK & TRUST CO. OF NEW YORK et al.**

**No. 3772.**

Court of Civil Appeals of Texas. El Paso.
Dec. 15, 1938.

Rehearing Denied Feb. 2, 1939.

A. G. McNeill, Kampmann & Burney, and W. P. Dobbins, all of San Antonio, for appellants.

Moursund, Ball, Moursund & Bergstrom, Sylvan Lang, Morris Wise, and Leslie Byrd, all of San Antonio, for appellees.

NEALON, Chief Justice.

This was an action brought in one of the District Courts of Bexar County by appellee, Sterling National Bank & Trust Company of New York, against Mamie J. Morris and Bessie J. Vaughan, the independent executrixes of the last will and testament of J. D. Guinn, deceased, and against the devisees in his will (Mamie J. Morris, Bessie J. Vaughan, Marguerite Peeler, Lalla Rookh Traylor and Mary Coers). Lottie Allercamp and husband were made parties defendant, and it was urged that a deed of trust given for their benefit by Mr. and Mrs. Traylor to secure payment of a debt of $1,000 was, if valid, subordinate to the liens of other lien claimants. Plaintiff prayed for judgment against the independent executrixes for the amount due on a certain special assessment for street widening done on South Alamo Street levied against the estate of J. D. Guinn, and against Lot 1, New City Block 155. Plaintiff prayed for foreclosure of its alleged lien against said property and the above named parties and their respective husbands, and also against Uvalde Rock Asphalt Co., Southwest Bitulithic Company and Lottie Allercamp and her husband, who filed a cross-action in which they sought to foreclose upon the undivided one-fifth interest of Lalla Rookh Traylor in said property on account of a deed of trust executed by Mrs. Traylor and her husband subsequent to the death of J. D. Guinn. Uvalde Rock Asphalt Company filed a cross-action seeking to foreclose an alleged lien which it claimed as owner of five assignable certificates of special assessment evidencing assessments for certain pavement work done by it on South Alamo Street, the assessments being against Mary Coers, Bessie J. Vaughan, Lalla Rookh Traylor, Marguerite Peeler and Mamie J. Morris, respectively, and upon their respective undivided one-fifth interests in said Lot 1, New City Block 155. It sought personal judgment against each of the said owners and foreclosure of its lien on each undivided one-fifth interest. The Southwest Bitulithic Company sought judgment foreclosing a certain special assessment lien levied upon said Block 1, of New City Block 155, and against J. D. Guinn for street paving work done on Arcinego Street, and also foreclosing a contract mechanic's lien executed by Guinn to secure payment for the same work. This Company not only sought foreclosure of its lien, but personal judgment against the independent executrixes, as such. Answers were filed by all defendants.

The case was heard without a jury. The court rendered a separate judgment in favor of the Sterling National Bank & Trust Company for the sum of $1,807.66 against each of the appellants, Mamie J. Morris, Marguerite Peeler, and Mary Coers, with foreclosure of lien against the undivided one-fifth interest owned by each of them, respectively; and in favor of the Uvalde Rock Asphalt Company for $344 against each of said five defendant owners, with like foreclosure against the undivided one-fifth interest of each of the three defendant owners last named; and in favor of the Southwest Bitulithic Company against Mamie J. Morris and Bessie J. Vaughan in their capacities as independent executrixes, for the sum of $1,053.84, establishing and foreclosing same as a first lien upon the undivided one-fifth interests of Bessie J. Vaughan and Lalla Rookh Traylor, and as a second lien inferior to those of the Sterling National Bank & Trust Company and the Uvalde Rock Asphalt Company upon the undivided one-fifth interests of Mrs. Peeler, Mrs. Morris and Miss Coers. The court denied the Sterling National Bank & Trust Company personal judgment against any of appellants. The court rendered personal judgment against Henry Traylor, and in favor of Mrs. Allercamp, but held her deed of trust invalid, and denied foreclosure. She did not appeal.

The Sterling National Bank & Trust Company and Uvalde Rock Asphalt Company are appealing and complaining that the evidence was insufficient to establish a homestead in Mrs. Traylor as to her one-fifth interest. The latter Company also

complains of that portion of the judgment awarding Sterling National Bank & Trust Company a decree of foreclosure against the interests of Mrs. Morris, Mrs. Peeler and Miss Coers. Bessie J. Vaughan and Mamie Morris, individually and as independent executrixes, and Marguerite Peeler, Lalla Rookh Traylor and Mary Coers are appellants, complaining of that portion of the judgment directing the sale of the various interests in the property and the disposition of any proceeds in excess of the amount necessary to satisfy the judgment in favor of the Southwest Bitulithic Company.

The lot involved in this suit fronts on South Alamo Street in the City of San Antonio and is bounded on one side by Arcinego Street. It was purchased by J. D. Guinn in 1905 and became the homestead of his family. His wife died testate in 1924. He was named as sole devisee and legatee in her will and also appointed independent executor. He continued to live on the property with some of his children and used it as his homestead until his death on October 22, 1928. He left a will by the terms of which he appointed Mamie J. Morris and Bessie J. Vaughan independent executrixes of his will and devised his property in equal shares to his four married daughters, Bessie J. Vaughan, Mamie J. Morris, Lalla Rookh Traylor and Marguerite Peeler, and Mary Coers, a friend. The will was duly admitted to probate and the independent executrixes qualified as such on January 22, 1929.

When J. D. Guinn died his daughter, Bessie J. Vaughan, and her husband were living on the property. When Guinn died, his daughter, Lalla Rookh Traylor, and her husband were not living upon the property, but were living in a rented house. The court found as a fact that Mr. Traylor formed an intention to move upon the property upon J. D. Guinn's death, but ill-health prevented him from doing so; that he and his wife moved into the premises about November, 1930, having previously removed thereto some of their furniture; and that they owned no other property during any of the times involved.

March 25, 1927 J. D. Guinn executed a mechanic's lien contract by the terms of which he agreed to pay to the Southwest Bitulithic Company $954.25, together with seven percent interest and reasonable attorney's fees, if incurred, for the paving of Arcinego Street, and granted a mechanic's lien upon said property to secure the payment of said debt. The City of San Antonio attempted to issue a special assessment certificate to the Southwest Bitulithic Company, but it is conceded by all parties that the attempted special assessment lien was not valid because the property was the homestead of Mr. Guinn.

June 30, 1913 the City of San Antonio adopted the Street Improvement Law, being Chap. 14, General Laws of the 31st Legislature, 2d called Sess., now Arts. 1086–1105, Revised Civil Statutes of 1925, and on the 8th day of March, 1920 passed an ordinance known as the "Improvement Ordinance," to carry said law into effect and to provide rules and regulations for assessing abutting property. The ordinance was admitted in evidence.

February 27, 1928, during the lifetime of J. D. Guinn, the City passed an ordinance declaring that a public necessity existed for the widening and straightening of South Alamo Street and directing the City engineer to prepare plans and specifications covering the proposed improvement and report the same, together with the names of the property owners abutting thereon, to the City Commissioners. September 15, 1928, the City engineer filed his report and included "J. D. Guinn, S. H. Guinn, deceased, J. D. Guinn, independent executor," as the owners of the property involved. September 24, 1928 the City passed an ordinance approving the engineer's report and ordering that a hearing be given to owners of abutting property and all persons interested on October 15, 1928. Notice to abutting owners was duly published and a copy sent by registered mail to J. D. Guinn. At a hearing held on October 15, 1928, the City Commissioners heard and considered the evidence, arrived at their conclusions, and determined to proceed with the improvement and to pass the ordinance levying the assessment. December 3, 1928, subsequent to the death of J. D. Guinn, but prior to the admission of his will to probate, the City governing body passed an ordinance levying special assessments for widening and straightening South Alamo Street, including an assessment against the property here involved, and the estate of J. D. Guinn as the owner thereof, in the principal sum of $7,330.40, and ordained that said amount, together with interest and attorney's fees, if incurred, constituted a personal liability of the owners and a good and lawful lien up-

on said property, superior to all other liens and claims, save and except State, County or Municipal taxes; and in conformity with the provisions of said ordinance, to evidence said assessment and lien, the City issued an assignable certificate of special assessment dated December 3, 1928, in the principal sum of $7,330.40, bearing interest at the rate of seven percent per annum from date. Ownership of this certificate passed into the Sterling National Bank & Trust Company, plaintiff in this suit, and was and is the basis of its claim herein urged.

April 7, 1930 the City of San Antonio issued to the Uvalde Rock Asphalt Company five assignable certificates of special assessment for pro rata shares of paving South Alamo Street, each certificate being in the amount of $145.32. Three of said certificates recited the levy of assessments against the interests of Mamie J. Morris, Bessie J. Vaughan and Mary Coers in said property, describing each as being an undivided one-fifth interest. The remaining two certificates, in the sum of $145.32 each, recited levies of assessments against the one-fifth interests of Lalla Rookh Traylor and Marguerite Peeler, respectively.

The trial court found as a fact that payments to the amount of $527.66 had been made upon the certificate of the Southwest Bitulithic Company, reducing the balance of principal and interest due thereon to $803.84, and that a reasonable attorney's fee for the attorneys representing said Company in this litigation is $250. The court further found that no payments had been made upon the five certificates held by the Uvalde Rock Asphalt Company and the balance of principal and interest due on them amounted to $244 on each certificate, and that a reasonable attorney's fee for the attorneys representing that Company was $100 upon each certificate.

The court further found as a fact that payments on the principal and interest on the certificate owned by the Sterling National Bank & Trust Company of New York amounted to $3,588.51, that the balance of principal and interest then due on said certificate was the sum of $7,371.68, and that a reasonable attorney's fee for attorneys representing said Company in this litigation was $1,666.65.

### Opinion.

While there are a number of questions involved in this appeal, the majority of them challenge the validity of the assessment proceedings upon which the alleged lien for street widening is based. None of appellants question the holding that Bessie J. Vaughan's interest was exempt, and that the property constituted her homestead from the date of her father's death. It is conceded that if the widening assessment lien of Sterling National Bank & Trust Company is valid, it is on a parity with the liens of Uvalde Rock Asphalt Company. It is further conceded that if the liens of those two Companies are valid, they are superior to the lien of Southwest Bitulithic Company.

We shall first consider the claimed lien of Sterling National Bank & Trust Company. The Uvalde Rock Asphalt Company insists that this claim lacks merit upon the theory that the lien attempted to be created by ordinance related back to the date of the passage of the resolution ordering the widening improvement, at which time J. D. Guinn was living and the property was his homestead. As stated, Mr. Guinn died before the final assessment ordinance was passed and the assessment was for one lump sum and against the estate of J. D. Guinn. We must, therefore, first determine which date controls. The proceeding was brought pursuant to the improvement ordinance of the City which provided the procedure to control in exercising the power granted by the Street Improvement Law—Arts. 1086–1105, Revised Civil Statutes, 1925. Neither in this statute nor in the City charter nor in the improvement ordinance is it provided that the lien shall date back to the date of the original resolution. In such a situation the lien becomes effective as of the date of the ordinance which declares the specific amount assessed against each abutting property and which fixes the personal liability of the owner of the property. In Smith Bros. v. Lucas, Tex.Civ.App., 15 S.W.2d 27, this principle was recognized, though the Commission of Appeals in the same case, 26 S.W.2d 1055, 1056, did not find it necessary to determine this question. We conclude that the assessment lien became effective as of December 3, 1928.

The validity of the lien is further challenged upon the ground that the assessment is against the "estate of J. D. Guinn," and an estate not being an entity, the assessment may not stand. Though additional reasons for the decision rendered were stated, the contrary was held by

the Commission of Appeals in Griffin v. City of Waxahachie, 276 S.W. 201, at least to the extent of holding that the assessment was not void. More than half a century ago the Maryland Supreme Court, in Moale v. City of Baltimore, 61 Md. 224, held valid an assessment levied against the estate of a deceased person, saying, as to the objection to the manner of the assessment, "it would seem to be too narrow a point, and entirely too refined, and inequitably technical for a Court of equity to declare that the city shall lose the tax and the appellants enjoy the benefits of the improvement without paying anything therefor, by reason of such imperfect designation of the person or property taxed. In common parlance 'the estate' is not only understood to indicate the property, but the takers of it; and when it is said that an estate is charged with the payment of any claim, it is well understood that those who are to take, with the incumbrance, are to pay it, in due proportion among them. Manifestly this language was adopted not only to designate the property, but also that the former owner was dead, and that there were successors in title whom it was more convenient to designate in mass without separately naming them." The Arkansas Supreme Court, in Bennett v. State, 62 Ark. 516, 36 S.W. 947, sustained an indictment for embezzlement that alleged ownership in an estate, saying that an estate is a person within the contemplation of the law, citing Billings v. State, 107 Ind. 54, 6 N.E. 914, 7 N.E. 763, 57 Am.Rep. 77, in which it was held that for the purposes of a complaint charging an offense an estate is an artificial person. In the absence of a statutory requirement that would bring about such a situation, it is not to be presumed that a City may be compelled to postpone a public improvement for years possibly until the courts determine who are the real owners of the land to be specially benefited. The proceeding under the circumstances is in rem, and for practical purposes those claiming under J. D. Guinn were as truly notified as are owners when process is directed to "unknown owners" or "unknown heirs." This case is to be distinguished from those in which there was record ownership in various co-tenants prior to the fixing of the assessment lien. In Uvalde Rock Asphalt Co. v. Lyons, Tex. Civ.App., 289 S.W. 202, 203, the court said, "There is nothing shown or pleaded that it was impossible to assess each owner and his property the true amount required of each so as to impress a lien on such share. The very title examined for the purpose of disclosing the names of the owners for assessment must have shown the amount of interest each claimed." In the instant case such a condition did not exist. The will had not been admitted to probate, and it is not made to appear that the City had notice of the identities of the beneficiaries thereunder. No one could say with certainty that the will would be admitted to probate, nor that a later will naming different beneficiaries might not be found. See, also, Pleasant v. Mims, Tex.Civ.App., 55 S.W.2d 171; Realty Trust Co. v. First Baptist Church of Haskell, Tex.Civ.App., 46 S.W.2d 1009. Assignments attacking the validity of the assessment here involved upon this ground are overruled.

■ The assignment attacking the authority of the City of San Antonio to levy the street widening assessment under the Act of the 31st Legislature, 2d Called Sess., which now appears as Arts. 1086–1105, Revised Civil Statutes of 1925, is without merit and is accordingly overruled. Art. 1086, R.C.S., 1925; Herbert C. Heller & Co. v. Y.M.C.A., Tex.Civ.App., 50 S.W.2d 495.

■ By its fourteenth assignment of error the Uvalde Rock Asphalt Company urged that there was no proof that the work of street widening was completed according to contract or accepted by the City. The assessment certificate was introduced in evidence. Under Art. 1090, Revised Civil Statutes, it constitutes prima facie evidence that all prerequisites to the affixing of assessment liens against the property have been performed. The pleadings of Mrs. Vaughan impliedly admitted the completion of the work by alleging that it was not completed until long after December, 1928. The entire effect of the testimony of Mrs. Vaughan was to admit that the street had been widened, but to deny liability because her father had failed to sign a contract. Uvalde Rock Asphalt Company's cause of action was upon assessment certificates issued to pave South Alamo Street as widened. The case was tried upon the theory that the widening work had been completed as contracted. All parties stipulated as hereinafter shown as to the amount due on the certificate. These matters taken in connection with Mr. Flannery's testimony and the other circumstances mentioned impel us to hold that there was sufficient evi-

dence to find that the widening contract was complied with.

There was no merit in the contention that the notice of the hearing of the property owners was invalid, upon the ground that it was addressed to owners who abutted upon the street prior to the widening rather than subsequent thereto. The assessment ordinance shows that the assessments were levied against the same property that was listed in the engineer's reports and named the same owners.

The Uvalde Rock Asphalt Company and the Sterling National Bank & Trust Company of New York contend that the trial court erred in holding that the property became the homestead of Mrs. Traylor upon the death of her father and in denying foreclosure of their respective liens against her one-fifth interest in the property. They question the sufficiency of the evidence to justify the court's finding. The finding rests upon the testimony of Mr. Traylor and Mrs. Vaughan and the dedicatory acts of Mr. and Mrs. Traylor. The court found that Mr. Traylor formed an intention to move into the property upon J. D. Guinn's death, but was prevented from carrying out his intention by ill-health. The testimony is undisputed that Mr. Traylor was in delicate health during a great deal of the interval between October, 1928, when Mr. Guinn died, and November, 1930, when Mr. and Mrs. Traylor moved into the premises. During that time they owned no other property. Mr. Traylor was living upon the property at the time of the trial. When questioned as to whether he was claiming it as a homestead he answered in the affirmative, and as to that time from the death of J. D. Guinn up to November 11, 1930, he testified that "it was our intention to move down"; that it was the intention of both himself and his wife. Mrs. Vaughan testified that within two or three days after her father's death she discussed the matter with Mrs. Traylor, who said she would like to move into the property. Mr. Traylor testified that he had been sick for two or three years, was in bed for several months and not strong enough to get out and attempt to move; that he was at liberty to move provided his health permitted it; that he couldn't move; that during the latter part of 1928 he was convalescing, but wasn't very strong; that his trouble required perfect rest; that in fact he was not supposed to try to talk and didn't do so for two or three

months; that it was his intention to move in "all along when I got able"; but that during the two years he was unable to move without a risk, probably a relapse, and that one main reason he didn't move was because there were stairs in the Guinn house that he would have to climb. Mrs. Vaughan corroborated Mr. Traylor's evidence as to the state of his health. In about six months after Judge Guinn's death the Traylors moved their piano and other furniture into the premises.

In Jolesch & Chaska Co. v. Hampton, Tex.Civ.App., 297 S.W. 271, it is held that the language of Art. 16, Sec. 51, of the Constitution is not to be applied literally, for if it were, it would be almost impossible for the head of a family who might be embarrassed with debt to acquire a homestead, since it often happens that in the acquisition of property intended for use as a home an unavoidable interval occurs between the acquisition and the actual use or occupancy for such purpose. Therefore, the courts have adopted the policy of treating this interval, under certain conditions, as a constructive occupancy. The intention in good faith by the claimant of the exemption to occupy the property as a homestead is sufficient to impress it with such character, but as no one can know from an expressed intention whether it is really entertained, the courts have required corroborative evidence in the nature of acts of preparation or efforts to so occupy and the like, in order to prove such bona fide intention. In the case of Cameron v. Gebhard, 85 Tex. 610, 22 S.W. 1033, 1035, 34 Am.St.Rep. 832, it was said that "intention is almost the only thing that may not be dispensed with in some state of case"; that acts of preparation constitute the corroborating witness to the declaration of intention, "the safeguards against fraud, and an assurance of the bona fides of the declared intention of the party." In that case it was held sufficient that the claimant asked for possession of the tract devised to him, but that his brother, holding under a lease from the testator, refused to yield possession. The ultimate question was held to be one of fact. In Scott v. Dyer, 60 Tex. 135, the claimants had sold their residence and had retained title to a portion of the property that was vacant, with the intention to use and occupy it as a homestead. Though no improvements were placed upon the reserved land it was held to be homestead. It is true that the en-

tire tract had once been dedicated as homestead, but, nevertheless, it is also true that the original residence had been abandoned and no actual preparation to occupy the retained portion was shown. Under the evidence admitted we are not prepared to say that the trial court erred in upholding Mrs. Traylor's claim of homestead. Assignments attacking this action of the court are overruled.

■ Appellants Mamie J. Morris, Marguerite Peeler and Mary Coers assign as error the finding of the court that $7,361.68 was due to the Sterling National Bank & Trust Company of New York and in charging the various non-exempt interests with the respective amounts adjudged against them, claiming that in this particular the judgment was excessive. To sustain their contention they invoke the rule that payments of $3,780.16 which had been paid on the certificate by the executrixes of the estate of J. D. Guinn should be applied only to that portion of the debt that was secured by valid liens. The statement of facts discloses a stipulation to the effect that the amount due and owing on the special assessment certificate of the Sterling National Bank & Trust Company of New York was $5,131.28, plus seven percent interest from December 3, 1931, which the defendants had failed and refused to pay. This, with the attorney's fees added, makes the sum for which the court rendered judgment. It does not appear that the owners of the interests so charged did not receive credit for their respective proportions of the aggregate payments. There was no allegation or proof that the Bank & Trust Company practiced fraud to secure the payments. The assignment is overruled.

All other assignments of error have been considered, and are overruled.

Judgment is affirmed.

### On Rehearing.

Uvalde Rock Asphalt Company calls attention to the fact that it did not join in the stipulation as to the amount due upon the assessment certificate declared upon by Sterling National Bank & Trust Company of New York. To clarify the statement made in our original opinion, we now state that only the devisees under the will of J. D. Guinn, deceased, expressly agreed and stipulated as to the amount due and owing upon the said special assesment certificate. We think that there is sufficient in the record to justify the finding as against Uvalde Rock Asphalt Company, even though it did not join in this stipulation.

Both motions for rehearing are overruled.