Rosetta Gravel Co. vs. Jollisant et al.

No. 12,988.

ROSETTA GRAVEL, PAV. NG AND IMPROVEMENT COMPANY VS MARY A. JOLLISAINT ET AL.

SYLLABUS.

The lien and right of pledge resulting from a local assessment for street paving attaches to property of the abutting proprietor without reference to the person in whom title is actually vested, and proceeding, taken against same for the enforcement of such lien and pledge, is one *in rem*, notwithstanding the title holder be cited for the purpose of carrying same into effect.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*E. Evariste Moise, Giunio F. Socola* and *John Wagner* for Plaintiff in case and in rule, Appellee.

*Dart & Kernan* for Mutual Loan and Building Company, Defendant in rule, Appellant.

Argued and submitted March 24, 1899.
Opinion handed down April 3, 1899.

The opinion of the court was delivered by

WATKINS, J. This is a proceeding, by rule, taken against the Mutual Loan and Building Company to compel it to show cause why it should not accept title to a certain improved real estate situated in the city of New Orleans, which was made by the sheriff under a writ of *fi. fa.* in the above entitled cause and tendered to it according to law —said property having been regularly adjudicated to said company at a public, judicial sale, for the price of $2,025.

The ground upon which defendant in rule refuses to accept the·

title tendered, and complete the adjudication, and to pay the purchase price, is that the title of the defendant in execution is one by donation *inter vivos,* and that the donor being yet alive, the title, by donation, was and is revocable, and subject to revendication at the death of the donor.

That such a title is, consequently, uncertain, and not such a title as it can be compelled to accept.

The contention of the plaintiff in rule is that it instituted suit against the defendants upon two certificates for street paving—all then being absentees, and represented by curators *ad hoc*—and obtained judgments, with recognition of lien and privilege upon the abutting property as securing the debt, and maintaining and enforcing its judicial sequestration thereon.

All the parties in interest were cited—one of the defendants having made a donation *inter vivos* to a co-defendant, the seized debtor.

On this judgment a writ of *fieri facias* was issued, the aforesaid property seized, advertised and sold, after due notice and full compliance with all the requirements of law, and at the sale thus made, the property was adjudicated to the Mutual Loan and Building Association, as stated *supra.*

On this state of facts its contention is that the judgment was one *in rem,* and that the title thereunder made is good and valid, irrespective of any latent imperfection or ambiguity in the title of the donor.

On the trial the rule was made absolute, and the Mutual Loan and Building Company has appealed.

There is in the answer of defendant in rule an averment to the effect, that no such title as respondent is bound to accept, has been tendered, for the reason that said property was acquired by one of the defendants by donation *inter vivos* from Samuel Barrett, who is still alive, and has living issue of his marriage, all of whom were minors; and, consequently, said title is subject to attack in the future by his heirs, should it be made to appear on the settlement of his succession that said donation infringes upon their *legitime.*

That is the only question with which we are called upon to deal.

The statement of plaintiff's case is as follows, viz.:

"This judgment is one *in rem* under the statute. It is *in rem* under the law. It is *in rem* under the practice. The defendants not having been personally served, the property being in the custody of the court,

under the writ, the judgment was and is necessarily, *in rem.* It can not bind the parties, save to the extent of the value of the property in the custody of the court. The judgment is, therefore, absolutely, a judgment *in rem,* not extending beyond the value of the property seized under the writ of judicial sequestration, and held by the court in its custody, at the time of the rendition of the judgment.

"The debt for which suit was brought, and on which the writ of judicial sequestration issued, and for which judgment was recovered, *is a debt of the property,* under the statute. It is true, under the statute, it is also a debt of the owner. The statute makes both the owner of the property and the property liable for the debt. The debt is,. therefore, under the statute, due both by the owner and the property. *The property,* under the statute, *owes the money, irrespective of the question in whom is title."*

"The donor had title and possession; it was recorded. That title, it may be, was defeasible, but still it was a good and valid title, until action was had to defeat it. The action would not have defeated the title, only to the extent the donation infringed on the *legitime* of the forced heirs of the donor. The title was,. therefore, defeasible in part;. not necessarily entirely.

"All parties in interest were before the court, represented by a tutor and curators *ad hoc.* The property which owed the debt was before the court. The property was there to be condemned; all the parties who could have defeated the donation, were there before the court, to be condemned to the extent of the value of the thing which owed the debt. The judgment condemned the property—logically by the force of the practice, legally under the statute.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"The title in the donee is good—not bad. It may be proved par-- tially bad, if the donation infringes the *legitime,* and, also, if the· heirs (children) of the donor, see fit to take action; but, *if sold for a real charge,* the charge for which the property is liened and burdened" with a privilege superior to all others; a charge which is a debt on the· property, irrespective of the person owning, the defendant had a good. title by the adjudication."

*Per contra* the contention of the defendant in rule is as follows, viz:· "The debt on which suit was brought, is, in its nature, an assess- ment against the property, and the name of Mrs. Barrett is used solely because the title stands in her name upon the books of the conveyance·

records.   The assessment necessarily appears in the name of whoever appeared to be owner on the conveyance records.   By statute it is a charge against the property, having rank superior to any mere conventional mortgage or ordinary debt.   The only method of enforcing the collection of this assessment is through the medium of a suit instituted against the person in whose name the bill is made, prosecuted to judgment, and thereafter the issuance of a *fi. fa.* to sell the thing against which the lien bears.

"It was sought in this case to charge all the parties who might hereafter have an interest in the property with notice that the assessment for the improvement of the property was being enforced, and to that end Samuel E. Barrett, the donor, his wife and his four children, who are now alive, were made parties through *curators ad hoc* and served with process for the collection of the assessment.   It is questionable whether such proceedings are sufficient to destroy the right of action of the minor children of Samuel E. Barrett for a revendication of the property, should it hereafter appear that the donation made to Mrs. Barrett, the assessment debtor, exceeds their *legitime.*   Their rights are not yet in existence, and it may be that the conditions under which they could exercise them will never arise; hence, they could not be bound by this suit in respect to an advantage which may result to them in the future.   It is only present and actual rights that courts sit to hear.   The making them parties to this suit can in no way affect them, as under no theory could it be held to divest the interest of the children now living, *nor those who may hereafter* be *born to Samuel E. Barrett,* as they have the right to institute this action of revendication.   The theory on which they were made defendants is, perhaps, founded on the Married Woman's title cases.   See particularly that of Duruty vs. Musacchia, 42 Ann., 357, and the decisions there cited.

"But if this practice is apposite, we nevertheless have the case of Tessier vs. Roussel, 41 An. 487, declaring that the title to property subject to this action is never safe until the donor's death and a settlement of his succession.

"We conclude, therefore, that the adjudicatee cannot get a good, valid and unencumbered title to the property, and the judgment below was erroneous in so holding and should be reversed."

The city charter, amongst other things provides, that for the paving or banquetting of any street, or portion thereof, the city council may, in its discretion, "force, impose, and collect of the front proprietors of

lots fronting on such streets, a special local assessment in proportion to the frontage, not exceeding the increase in the value of the property, occasioned by the local improvement; and such levied assessment shall have a *first privilege superior to vendor's privilege, and all other privileges and mortgages.*" Section 37 of Act 20 of 1882. Section 3 of Act 73 of 1876.

The language employed in the latter statute is, that the abutting property "shall be deemed, considered and treated as pledged for the payment of said cost."

In Asphalt Paving Co. vs. Gogreve, 41 An. 251, we held that those two acts were in no sense, "in conflict, inconsistent with, or contrary to each other"; and that Section 119 of Act 164 of 1858, which is identical therewith *ipsissimis verbis,* was examined and applied to a similar paving contract for the grading and shelling of a street, in Marquez vs. City of New Orleans, 13th Ann. 319.

To a like effect is Correjolles vs. Succession of Foucher, 26th Ann. :362, construing the similar provisions of an act of 1868.

See, also, Payssoux vs. Succession of Baroness DeChaurand, 36th Ann. 547, construing similar provisions of Act 113 of 1886.

In quite a number of cases this court has held that local municipal assessments for local improvements are valid, although the organic law provides that all *taxation* shall be equal and uniform; and the reason for that rule is, that such assessments are not taxation within the meaning of the Constitution. Yeatman vs. Crandall, 11 Ann. 220. The New Orleans Draining Company, Praying for the Confirmation of a Tableau, 11th Ann. 371. Wallace vs. Shelton, 14th Ann. 496. O'Leary vs. Slloo, 7th Ann. 25. Municipality vs. Guillotte, 14th Ann. 297. 2 Dillon's Munc. Corp. Secs. 617, 619. Cooley on Taxation, p. 117; 416 *et seq.* Charnock vs. Levee Board, 38th Ann., 323. Planting Company vs. Tax Collector, 39th Ann. 461.

We think it unnecessary to analyze these decisions, inasmuch as the principles therein announced have been so generally accepted and acted upon by this court in many more recent decisions, that they may be accepted as in some respects axiomatic in its jurisprudence.

The following cases may be appropriately cited in support of that proposition, viz.: State *ex rel* Hill vs. Judges, 46th Ann. 1293. Railroad Company vs. Sheriff, 47 An. 708. Fayssoux vs. Henry Denis, 48th Ann., 850. State *ex rel.* Tax Collector vs. Court of Appeals, 49th An. 1221. Shreveport vs. Puscott, 51 A. —.

In quite a number of decisions, this court has held, that in matters of ordinary taxation, which are uniformly construed strictly, it is permissible for tax assessors to list real property for taxation in like manner as the title thereto stands upon the books of the recorder's office; and that the title conveyed in expropriation thereof for delinquent taxes, is valid and indefeasible, notwithstanding same might have been defeated in an action at law by reason of some latent ambiguities therein.

On this proposition the following opinions may be cited, viz.: Sewell vs. Watson, 31st Ann. 589. Mason vs. Bemiss, 38th Ann. 935. Carter vs. City, 33rd Ann. 816. Insurance Co. vs. Levi, 42nd Ann. 432. Oteri vs. Tax Collector, 42nd Ann., 374. Prescott vs. Payne, 44th Ann., 650. Augusti vs. Citizens' Bank, 46th Ann., 530. In the Matter of the City of New Orleans, Praying to be Put in Possession, 51st Ann. ——.

On this theory, we feel safe in holding that the lien and right of pledge resulting from such assessments, of necessity, attach to the property of the abutting proprietor without reference to the person in whom the title is vested; and that proceedings taken for their enforcement are proceedings *in rem,* notwithstanding the owner is cited for the purpose of carrying same into effect.

If this were not so, the enactment of such laws would be a vain and fruitless proceeding.

Judgment affirmed.