MARY GOMERINGER and EQUITABLE MORTGAGE
COMPANY OF BALTIMORE CITY, Assignee,

*vs.*

WILLIAM H. McABEE and THE MAYOR AND CITY
COUNCIL OF BALTIMORE.

*Constitutional law*: *due process of law; municipal ordinances.*
*Liens on property*: *sewer connections; Baltimore City;*
*Acts of* 1904, *Chapter* 349, *and* 1912, *Chapter* 24.

A municipal ordinance duly passed in virtue of legislative
authority is a law within the meaning of the term as used in
constitutional law, relating to due process of law, etc.     p. 561

Chapter 349 of the Acts of 1904, providing for a sewerage
system for Baltimore City, confers upon the city the power to
pass any ordinance, to provide for any remedial proceedings or
process, or for any penalty that, in its judgment, should be
necessary properly and effectively to carry out the purposes of
the legislation; by an ordinance, No. 58, approved December
28, 1911, the city provided that upon the refusal or neglect of
the owners of property to make connections with the sewerage
system, the work should be done by the City Engineer, and mak-
ing the cost thereof a lien upon the property, and providing
for penalties and the collection thereof; the ordinance provided
for the appointment of a day for the property owner to show
cause, and for an appeal to the courts; Chapter 24 of the Acts
of 1912 made every indebtedness accruing to the city under
that ordinance a lien upon the property of such property owner,
as in the ordinance declared, and collectible as therein pro-
vided: *Held,* that the laws and ordinance were constitutional.

pp. 562, 563

In making such connections, if, with the agreement of the
property owner and the contractor, the city has the contractor
put in fixtures in the house necessary for proper sewage dis-

posal, and advances the money for the agreed price therefor, it is proper to include such sums in the lien for making the connection.                                      pp. 563, 564

*Decided January 9th, 1917.*

Appeal from the Circuit Court of Baltimore City. (DAWKINS, J.)

By an agreement between a property owner, the City of Baltimore and the contractor, the City agreed to put in a sewerage connection for the property, at the contractor's price of $100 and an extra $5.00 for the supervision, etc.; under the terms of the ordinance and laws in such case made and provided, the same was a lien upon the property until paid; the City also agreed to advance the money, according to the contractor's estimate, for installing a bathtub and flush closet; on the sale of the property under a mortgage foreclosure the sum realized was insufficient to pay the mortgage debt and interest after allowing for taxes and the above liens. This appeal was taken in order to test the validity of the lien for the sewer connection and fixtures.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Thomas Charles Williams* (with whom was *E. Milton Altfeld* on the brief), for the appellants.

*R. Contee Rose, Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor for Baltimore City,* on the brief), for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City overruling certain exceptions to the ratification of an auditor's account distributing the proceeds of sale under a decree for a sale of mortgaged premises.

The exceptions are based upon the allowance of a lien claim by the Mayor and City Council of Baltimore for money paid by it, with interest and penalties, in connecting the property described in the mortgage with the Sanitary Sewerage System of the city.

The lien claim allowed by the auditor for the sewer connections put in by the city amounted to the sum of $116.55, and was allowed as a preferred claim in the auditor's account stated in the case.

It appears from the auditor's account that the amount received from the sale of the mortgaged premises amounted to the sum of $1,000, but this sum, after the payment of the costs of sale and the prior liens of two hundred and eighty-three dollars and sixty-six cents, left the sum of $49.61 still due by the mortgagor on the mortgage debt, which debt and interest amounted to $654.20.

The principal contention of the appellant is that the mortgage debt is a prior lien to the city's claim, and it was error to allow this claim as a preferred lien over the mortgage debt.

The lien of the Mayor and City Council of Baltimore for connecting the owner's property in question with the Sanitary Sewerage System of the city is based and claimed under the provisions of Ordinance No. 58 of the Mayor and City Council of Baltimore, approved December 28th, 1911. The mortgage to the appellant Gomeringer is dated June 1st, 1912, and the second mortgage to the appellant, The Equitable Mortgage Company, is dated July 1st, 1912.

The ordinance, it will be seen, giving the lien to the city for the cost of the work in connecting the property, was approved December 28th, 1911, prior in date to the mortgages and before they were placed upon the owner's property.

The title of Ordinance No. 58, approved December 28th, 1911, is as follows: "An Ordinance to effectuate the purposes of Section 7, of Chapter 349 of the Acts of the General Assembly of Maryland of 1904, relating to the New Municipal Sewerage System; and to provide penalties for

the failure or refusal of the owners of property to make con-
nections with said sewerage system; and to provide for the
making of such connections by its City Engineer, in the
event of such failure or refusal, and to provide for making
such penalty and the costs of making such connections a lien
on such properties, and for the collection thereof, and to
provide penalties for violations of the provision of this ordi-
nance."

The ordinance, then, provides, that the city is to put in
the sewer connections if the property owner fails to do so, and
to appoint a day for the property owner to show cause, why
charges should not be made against him, and with a right of
appeal to the City Court as in case of new assessment. It
also provides, as follows: "If such party shall fail to appear
within the time limited, or fail to show any just reason why
said charge should not be made the Appeal Tax Court shall
cause such charge to be entered in a book to be provided for
that purpose and kept in the office of the Collector of Taxes,
similar to that which is now kept for charges for street assess-
ment. Said entry shall show the amount of the expense for
making the sewer connection and the date when said expense
was incurred by the City Engineer and said administrative
charge or penalty and shall contain the further statement
that one-fifth of said total expense shall be added to the tax
bills on said property for each of the next succeeding five
years with interest on each said one-fifth from the date when
said expense was incurred by the City Engineer, and there-
upon it shall be the duty of the City Collector in preparing
the tax bills for each of the next succeeding five years, to add
the amount of one-fifth of said whole charge with interest
from the date when said expense was incurred by the City
Engineer to the tax bill upon said property. And the said
one-fifth so added and interest thereon shall be a lien on the
property to the same extent and be collectible in the same
manner, as the city taxes thereon."

This ordinance was passed in pursuance of the power con-
ferred upon the Mayor and City Council of Baltimore by the

Act of 1904, Chapter 349, establishing a sewerage system for the City of Baltimore and the terms of this ordinance was subsequently ratified and confirmed, by the Act of 1912, Chapter 24.

By section 2 of the last named Act, it is provided, that "Ordinance No. 58 of the Mayor and City Council of Baltimore, approved December 28th, 1911, be and it is hereby ratified and confirmed, and every indebtedness accruing to the Mayor and City Council of Baltimore from any property owner in said city under and in pursuance of the terms of said ordinance is hereby declared to be a lien upon the property of such property owner as in said ordinance declared, and collectible as therein provided."

The language of this ordinance, it will be seen, is clear and certain, that the city shall have a lien upon the property for the work done, in connecting the premises with the sewerage system, and as in this case, the legislative authority and the ordinance itself, are prior in date to the mortgages, we have no hesitation in holding that the city's lien was prior to that of the appellants. The lien related back and applied from the date of the Act providing for it.

It is well settled that an ordinance passed by legislative authority is a law within the meaning of that term, as used in constitutions. *Gould* v. *Baltimore,* 120 Md. 540; *New Orleans Water Co.* v. *New Orleans,* 164 U. S. 471; *Walla Walla* v. *Water Co.,* 172 U. S. 1.

In *Provident Institution* v. *Mayor and Alderman of Jersey City,* 113 U. S. 506, the Supreme Court of the United States in dealing with similar objections, as those raised in this case, said: The mortgages of the complainant were not created prior to that statute, but long subsequent thereto. When the complainant took its mortgages, it knew what the law was; it knew that, by the law, if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lot. It chose to take its mortgages subject to this law; and it is idle to contend that a postpone-

ment of its lien to that of the water rents, whether after accruing or not, is a deprivation of its property without due process of law. Its own voluntary act, its own consent, is an element in the transaction. The cases referred to by counsel to the contrary, holding void a consent exacted contrary to the Constitution, have no bearing on the present cases.

And upon the question of the imposition of a penalty and a rate of interest in addition to the charges and costs, said: But we look upon these provisions as merely intended to enforce prompt payment, and as incidental regulations appropriate to the subject. The law which authorized these coercive measures gave to mortgagees and judgment creditors the right to pay the rents and to have the benefit of the lien thereof; so that it was in their own power to protect them-selves from any such penalties and accumulations of interest. They are analogous to the costs incurred in the foreclosure of the first mortgage, which have the same priority as the mortgage itself over subsequent encumbrances. *Vreeland* v. *O'Neil*, 36 N. J. Eq. 399; *Dressman* v. *Bank*, 100 Ky. 571.

The manifest object and purpose of the Acts of 1904, Chapter 349, and of 1912, Chapter 24, and of Ordinance No. 58, passed in pursuance of these Acts, was to preserve and protect the sanitary condition of the City, and to establish a sewerage system for the City. Full power was conferred upon the Mayor and City Council of Baltimore to pass any ordinance, to provide for any remedial proceedings or processes or for any penalty that may be necessary in its judgment to properly and effectively carry out the purposes of this legislation. It was also provided, under the power conferred "to do any and all things reasonably necessary to be done to compel the owners of property to place and maintain the same in relations of full co-operation with the sewerage system."

The Ordinance, here in question, we think, is directly within the power conferred by the two Acts of the General

Assembly of Maryland, referred to herein and is free from the constitutional objections urged against it. *Taylor* v. *Baltimore* (No. 26, Oct. T., 1916, decided Jan. 12, 1917); *Balto.* v. *Clunet,* 23 Md. 449; *Rossberg* v. *State,* 111 Md. 394; *Balto.* v. *Reitz,* 50 Md. 574; *Calvert Co.* v. *Hellen,* 72 Md. 606.

But it is contended upon the part of the appellants, that other work was done, not required under the ordinance and this was included in the sum paid by the City.

It will be seen, from the contract set out in the Record, that the agreement between the owner of the property, the party of the first part, the contractor, the party of the second part, and the Mayor and City Council of Baltimore, the party of the third part, was to do all the work necessary and required by the Act of 1904, Chapter 349, and Ordinance No. 58, approved December 28th, 1911, upon the property of the owner, at and for the sum of $100, and that the owner was to repay the amount of such expense plus five dollars in five equal instalments, with interest, and that such instalments and debt shall be a lien on the property and shall be added to the tax bills for such years and collected in the same manner as other taxes on the property. The work was done according to the contract and the sum of $105 was paid by the City. The instalments for the sewer loan were entered by the Appeal Tax Court and properly billed, as required by the Ordinance. The State and City taxes for the years 1913, 1914 and 1915 were due and unpaid, at the date of the sale, and the City filed its lien claim with the auditor in this case. *Code of P. G. L.,* Art. 81, sec. 68; *Blackistone* v. *State,* 117 Md. 237.

The witness McAbee, the owner of the property, testified that the following work was done by the contractor under the contract, to wit, he made connection with the street and back through the cellar up to the bath room, and placed therein a bath tub, a wash bowl and a flush closet and an enameled sink in the kitchen. If the installation of the fixtures mentioned by the witness were necessary for a proper

disposal of the sewerage and drainage and to connect the house drains with the sewerage system then they were clearly within section 7 of the Act of 1904, and Ordinance 58, passed December 28th, 1911. The City paid the money for the work agreed to be done by the owner of the property and the contractor for the sewer connection as required by the Act and the Ordinance referred to, and assuming there was other work done, the mortgagees received the benefit of it in the improvement of the property. The taxes were allowed to remain unpaid until they amounted to $82.13/100 and the accrued interest on the mortgage amounted to $26.20/100. The sewer connections undoubtedly enhanced the value of the property, and the mortgagee received the benefit of this in the price at the sale. We find no merit in the appellants' contention on this branch of the case.

For the reasons stated, the order of the Circuit Court of Baltimore City, dated the 1st of March, 1916, will be affirmed.

*Order affirmed, with costs.*