JOHNSON et al. v. CITY OF FORT WORTH.
(No. 999–4870.)*

Commission of Appeals of Texas,, Section A.
Nov. 30, 1927.

1. Evidence ⬤⟹31—The Supreme Court takes judicial knowledge of charter of city of Fort Worth.

The Supreme Court takes judicial knowledge of charter of the city of Fort Worth.

2. Municipal corporations ⬤⟹435—Lien for paving improvement, under charter and ordinance of Fort Worth, could not be fixed on abutting property after it became homestead.

Where under Fort Worth City Charter, §§ 8, 9, lien for paving improvement is fixed by ordinance which takes effect from time of passage without publication, lien under ordinance passed on May 25, 1915, after street improvement was completed, could not become a lien on homestead property abutting improvement, where property was purchased and made homestead of owner before lien became fixed.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by the City of Fort Worth, for the use of the Roach-Manigan Company, against R. D. Johnson and others. Judgment for defendants was reversed and rendered by the Court of Civil Appeals (294 S. W. 690), and judgment certified to the trial court, and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and judgment of district court affirmed.

J. R. Black, of Fort Worth, for plaintiffs in error.

Charles Kassel, of Fort Worth, for defendant in error.

CRITZ, J. The city of Fort Worth, for the use and benefit of Roach-Manigan Paving Company, instituted this suit in the district court of Tarrant county to recover on a paving certificate issued by said city, and for foreclosure of an alleged paving lien on certain lots abutting on the street which had been paved under proceedings of the board of commissioners of that city, against R. D. Johnson and wife, Mrs. R. D. Johnson, and also against J. J. Perkins and Home Development Company. The facts as found by the Court of Civil Appeals, and which are undisputed, are reported in 294 S. W. 690, and will not be repeated here except where necessary to explain this opinion.

It appears from the undisputed facts that on and prior to December 28, 1912, the property sought to be foreclosed on in this suit was owned by J. J. Perkins, and that same remained the property of J. J. Perkins until June 10, 1913, when it was sold to R. J. Rhome. It passed from Rhome to Home Development Company, and was by it conveyed by deed dated September 18, 1914, to R. D. Johnson and wife, Mrs. R. D. Johnson, plaintiffs in error. All of the above conveyances were promptly recorded.

[1] While the land in question was still the property of J. J. Perkins, the board of commissioners of the city of Fort Worth passed a resolution providing for the improvement of the street abutting this property, ordering bids, etc., and this resolution contains a provision that the contractor shall not be obligated to pave in front of any one whose property shall be exempt from the enforcement of the assessment against him for the cost thereof. A decision of the questions involved in this case will require construction of sections 8, 9, and 15, of chapter 12, of the charter of the city of Fort Worth, of which this court takes judicial knowledge. Said sections read as follows:

"Sec. 8. When the contract or contracts for improvements have been executed and approved, if any part of the costs is to be assessed against property or its owner or owners, the city engineer shall at once prepare a statement containing the names of persons, firms, or corporations or estates owning property abutting on the highway, or section thereof, to be improved, and the number of front feet owned by each with such description by lot or block number or otherwise, sufficiently to identify the same, and also containing an estimate of the total cost of the proposed improvement, the cost per front foot of abutting property, and the total cost proposed to be assessed against such owner and his property. Said statement shall be examined by the board of commissioners and any errors therein corrected, but no error or omission shall invalidate any assessment made thereunder. When said statement has been approved by said board, it shall then determine and declare the necessity of assessing any part of the cost of proposed improvements against such owners and their property by resolution directing notice to be given to such owners

and fixing the time and place of a hearing to be given them. Such notice shall be signed by the city secretary or other officer designated by the board, and shall state the time and place of hearing, the general nature of improvement proposed, the highway or section thereof to be improved, and the total amount and amount per foot proposed to be assessed against each owner and his property.

"Such notice shall be served by publishing same for five successive days in some newspaper published in said city and by mailing a copy thereof by registered letter deposited in the post office of said city, directed to the address of each owner, if known, but if not known, then to the address of his agent or attorney, if known. Said letters shall be posted at least ten days before the day of said hearing, but service of said notice by advertisement shall be conclusive and binding, whether service by posting shall be had or not, the latter being merely cumulative. On the day fixed for said hearing or any time thereafter before any assessment is made, any person, firm, corporation, or estate owning or having any interest in any property proposed to be assessed for any part of the cost of such improvement, or against whom any personal charge is proposed, shall have the right to appear before said board of commissioners in person or by attorney or agent, and shall be entitled to a full and fair hearing as to all matters affecting said assessment or personal liability, or the benefits of said improvement, if any, to property proposed to be assessed and any objection to such assessment or to the making of such improvement, or any invalidity or irregularity in the proceedings with reference thereto, or any other objection. All objections shall be filed in writing, and thereafter the board of commissioners shall hear and determine the same, and opportunity shall be given to persons filing objections to subpœna witnesses and produce testimony. Said hearing may be adjourned from time to time till completed without further notice. The said board shall have power to inquire into and determine all facts necessary to the adjudication of objections and the ascertainment of special benefits to such owners by means of such improvements, and shall render such judgment in each case as shall be just and proper. Objections to the regularity of any proceedings or the validity of any assessment or charge of personal liability against any person or property shall be waived unless presented at the time and in the manner herein specified.

"Sec. 9. When said hearing has been concluded the board of commissioners shall, by ordinance, which shall take effect from its passage, without publication or other prerequisites, assess against the several owners of property, and their property abutting on the highway or section thereof ordered to be improved, such part of the cost of improvement as said board may have adjudged against them. Said ordinance shall fix a lien upon said property and declare the respective owners thereof to be personally liable for the amounts assessed against them, and shall state the time and terms of payment of such amounts, and may prescribe that said amounts may be paid in not to exceed three installments (except as hereinafter provided) payable in not more than three annual payments next after the completion of such im-

provement. That said ordinance shall prescribe the rate of interest upon deferred payments, not exceeding 8 per cent. per annum, and shall provide that failure to pay any installment when due shall mature all of said deferred payments. But any owner shall have the right to discharge any installment before maturity by the payment of same with accrued interest to date of payment. The lien and charge of personal liability above referred to shall secure and include all costs and collection and reasonable attorney's fees when incurred. Upon the payment in full of any assessment against any such property the city shall, acting by its mayor, at once execute a release which shall discharge the lien thereof.

"More than one parcel or lot of land, the property of one owner, or owned jointly by two or more owners, may be assessed together without invalidating said assessment or the lien thereof, or any claim of personal liability. The cost of such improvement assessed against any property or its owner, together with the interest and costs of collection, and reasonable attorney's fees, when incurred shall constitute a personal claim against such property owner, and be secured by lien on such property superior to all other liens, claims, or titles, except lawful taxes, and such liability and lien may be enforced in any court having jurisdiction, or by sale of such property by the officer, and in any manner as far as applicable, as sales are authorized to be made for nonpayment of city taxes, but it shall not be necessary to sell at the same time as for delinquent taxes. The recital in any deed made in pursuance to such sales that all legal prerequisites to the validity thereof have been complied with shall be prima facie evidence thereof and without further proof shall be presumed to be true.

"The board of commissioners may by resolution make such rules and regulations as may be deemed proper to enforce the collection of such assessments. Any error or omission in any proceeding herein provided for shall be corrected by the said board and shall not invalidate the said proceedings. The passage of such ordinance making said assessment shall be notice to all persons of the lien created thereby."

"Sec. 15. The board of commissioners may also authorize the issuance by the city of assignable certificates against abutting property owners, or against persons, firms, corporations, or estates using or occupying highways. Such certificates shall be payable to the contractor, or to the city, should the city pay the whole cost of improvements, as set out in section 14, and the board shall fix the form and terms of such certificates. The recital in such certificates that proceedings with reference to such improvements have been made in compliance with the terms thereof, and that all prerequisites to the fixing of the lien and charge of personal liability evidenced by such certificates have been performed, shall be prima facie evidence of the facts so recited and no other proof thereof shall be required, but in all courts the said proceedings and prerequisites shall, without further proof, be presumed to have been had and performed. Such certificates shall be executed by the mayor and attested by the city secretary, or such officer as may be designated by said board, with the corporate seal. Such certificate when payable to the city may be sold by it is (as) may be provided by the board of commis-

sioners, and the proceeds of said sale shall become part of the permanent street improvements fund."

We think that the provisions of sections 8 and 9 clearly apply to, and should be applied to, the owners of property abutting on the street proposed to be improved at the time the contract is entered into, and at the time the things prescribed in sections 8 and 9 of the said charter are done and performed.

It will be noted that section 8 provides that when the contract or contracts for improvements have been executed, etc., if any part of the cost is to be assessed against property or its owner or owners, the city engineer shall, at once, prepare a statement containing the names of the persons, etc., owning property abutting on the highway or section thereof to be improved, etc., and the board is required to give notice fixing a day of hearing, etc. Section 9 of said charter prescribes when and how the lien against property abutting on the street is fixed. This section, which prescribes what shall be done after the hearing and proceedings provided for in section 8 have been had, provides that:

"When said hearing has been concluded, the board of commissioners shall by ordinance, which shall take effect from its passage, without publication or other prerequisites, assess against the several owners of property, and their property abutting on the highway, or section thereof to be improved, such part of the cost of improvements as said board may have adjudged against it. Said ordinance shall fix a lien upon said property and declare the respective owners thereof to be personally liable for the assessment assessed against them," etc.

Section 9 further provides that:

"The cost of such improvement assessed against any property or its owners, together with the interest and cost of collection, and reasonable attorney's fees when incurred, shall constitute a personal claim against such property owners, and be secured by a lien on such property," etc.

[2] Sections 8 and 9 of the charter of said city, when construed together, leave no room to doubt as to how or when the lien securing the paving certificate is fixed. Under the express provisions of section 9 it is fixed by ordinance, passed by the board of commissioners of the said city after the hearing provided for under section 8 has been had.

Said section 9 of said charter further leaves no room for construction as to what shall constitute notice of the lien created by said ordinance, as said section, referring to the ordinance fixing personal liability and the lien, provides:

"The passage of said ordinance making said assessment shall be notice to all persons of the lien created thereby."

An examination of the paving certificate set out in the statement of facts and of the Ordinance No. 468 referred to in said certificate, together with the other averments of said certificate, show that said ordinance authorizing the issuance of said certificate, and making the assessment, and attempting to fix the lien to secure said certificate, was passed on May 25, 1915, after said improvement on said street had been completed and long after said property had become the homestead of Johnson and wife.

Johnson and wife having purchased the property and made it their homestead at a time before any lien had been fixed thereon, it follows, as a matter of course, that no lien could be fixed after the property became a homestead.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.