**SMITH BROS., Inc., v. LUCAS et al.** *
(No. 10315.)

Court of Civil Appeals of Texas. Dallas.
Dec. 8, 1928.

Rehearing Denied March 9, 1929.

28

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellant.

Church, Read & Bane, of Dallas, for appellees.

Geo. T. Burgess and F. H. Lowrance, both of Dallas, amici curiæ.

JONES, C. J. In a suit in a district court of Dallas county by Smith Bros., Inc.; appellant, against appellees, W. J. Lucas and others, to recover a personal judgment against Lucas and the foreclosure of a lien for pavement on certain described property against Lucas and the other appellees, judgment was entered in favor of all of appellees, and an appeal has been duly prosecuted to this court. The facts necessary for a disposition of the questions raised on this appeal are:

On February 23, 1924, the governing body of the city of Dallas duly passed a resolution ordering the pavement of a portion of Seventh street, under plans and specifications duly prepared and filed by its engineer. Appellant was awarded the contract for such pavement, the cost of which was to be assessed against the property abutting on paved portion of such street and against the owners of such property, except the city was to pay the cost of paving on all street intersections. All the preliminary steps, required by the Dallas City Charter to be taken, in order to fix a personal liability for such costs on the respective owners of said property and to fix a lien on the property, were duly performed by the governing body of the city of Dallas and appellant duly executed its contract of paving. One of these preliminary steps was the adoption of an ordinance by the governing body of the city of Dallas, on September 21, 1925, fixing the amount of the cost of paving to be assessed against each abutting property owner, declaring his personal liability therefor, and declaring a lien against his said property for the cost so assessed against him. This ordinance fixed the amount assessed against Lucas for the cost of this street improvement of $578.72, declared his personal liability for such sum, and declared a lien on his abutting property for the payment thereof; also on September 21, 1925, the paving certificate, authorized by the city charter and ordinance, was duly issued to appellant. This certificate was in due form and is clothed with the legal effect the city charter gives to such certificates.

This city ordinance described the property of Lucas as located on Seventh and Denver streets, in city block 74/3055, and abutting on Seventh street 97.5 feet. The recorded plat of the Oak Cliff addition to the city of Dallas, in which addition this property is located, designates this said lot as lot No. 8 of said block, and gives its dimensions as 100 feet frontage on Seventh street and a depth of 150 feet, making 150 feet frontage on Den-

ver street. Some years prior to the passage of the original resolution declaring the pavement of Seventh street, a strip fronting 2½ feet on Seventh street and off of the east side of this lot was sold to the owner of the adjoining lot. In 1922, the owner of lot No. 8 subdivided it into three lots, each fronting 50 feet on Denver street and extending back 97½ feet, and these subdivision lots will be referred to as the north lot, the middle lot, and the south lot. The north lot is the only one that abuts on Seventh street. On April 8, 1928, Mrs. Mae E. Milks, a feme sole, acquired by purchase from the then owner, the north and the south lots; the owner executing to her separate deeds for each lot. On April 6, 1922, she also acquired from the same owner the middle lot. Each of the three deeds of conveyance described the lot conveyed as being a part of original lot No. 8 and as having a frontage of 50 feet on Denver street, and each was filed for record in the Dallas county deed records and duly recorded.

On May 22, 1922, appellee Lucas purchased from Mrs. Mae E. Milks both the north and middle lots, receiving a separate deed of conveyance for each lot, and duly placed the deeds of record in Dallas county. On October 7, 1922, Mrs. Mae E. Milks repurchased from appellee Lucas the north lot and duly placed this deed of record. On November 28, 1922, appellee Lucas and Mrs. Mae E. Milks were legally married. After the marriage they first lived in the house on the said middle lot, but on the last of November, 1922, they established their homestead on the north lot, the one that has a side frontage of 97½ feet on Seventh street, and lived on this property as their homestead until the 20th day of February, 1925, when they were legally divorced. At the time of the marriage, Mrs. Mae E. Milks had three minor children by a former marriage, who lived with their mother and constituted a part of the family residing on this north lot. Lucas had no children, and none were born of this marriage. On February 23, 1924, the date of the passage of the original resolution, this lot was the separate property of the wife of appellee Lucas and was the homestead of the family. On January 27, 1924, by instrument of writing duly executed by them and filed for record on said date, Lucas and wife designated this north lot as their homestead.

In the judgment awarding a divorce, the court approved an agreement between the parties for division of property, and this agreement recites the separate ownership of the wife of this north lot. Likewise it recites the separate ownership of the husband in the middle lot. Ownership of the south lot had heretofore been transferred. On February 21, 1925, the day following the divorce, appellee Lucas purchased from his divorced wife the north lot, and a few weeks later moved into same, where he has continually resided since said time. A portion of this time, if not all of it, the record not being clear, the minor children of the divorced wife resided with him, and on the 8th day of September, 1927, he legally adopted these children.

Before the passage of the said ordinance, appellee Lucas, in response to notice legally given, appeared before the governing body of the city of Dallas and protested the paving charge assessed against the lot abutting 97½ feet on Seventh street. Appellant, in its petition in this case, does not take cognizance of the subdivisions of lot No. 8, but alleged the existence of a lien against that portion of lot No. 8 that fronts 97½ feet on Seventh street and extends back 100 feet, omitting in this description the south lot. The parties defendants in this suit, other than Lucas, include the record owner of the middle lot and those who own pre-existing liens against the north and middle lots.

Section 1 of article X of the charter of the city of Dallas provides for street improvements. In subdivision (h) of said section 1, the various steps for fixing a lien on abutting property and a personal obligation on the owner of such property for paving a street are given, and each step therein required was taken in the instant case. The last step provided for in subdivision (h) is the hearing of protest by interested parties on notice issued to them. Then follows subdivision (i), which, in so far as it bears on the issues of this case, reads as follows:

"When the hearing above mentioned has been concluded, the board of commissioners shall, by ordinance, assess against the several owners of property and against their property abutting upon the public highway or highways, or part thereof, ordered to be improved, such proportionate part of the costs of such improvements as by said board may have been adjudged against said respective owners and their property. Said ordinance shall fix a lien upon such property and declare the respective owners thereof to be personally liable for the respective amounts to be assessed. * * * The cost of any such improvement assessed against any property or owner thereof, together with all costs and reasonable expense in collecting the same, including reasonable attorney's fees when incurred, shall constitute a personal claim against such property owner, and shall be secured by a lien on such property superior to all other liens, claims or titles, except city, county and state taxes, and such personal liability and lien may be enforced either by suit in any court of competent jurisdiction, or by sale in the same manner, as far as applicable, as sales are authorized to be made by the city of Dallas for the nonpayment of taxes. * * * In any suit brought under the provisions of this section, it shall be proper

to join as defendants two or more property owners who are interested in any single improvement or any single contract for such improvement; the person or persons who own property at the date of any ordinance providing for the assessment thereof, shall be severally and personally liable for their respective portions of the said 'assessment. The lien of such assessments shall revert back and take effect as of the date of the original resolution ordering the improvement, and the passage of such resolution shall operate as notice of such lien to all persons. * * * "

Subdivision (k) provides, in effect, that the paving contractor is not required to pave in front of property exempt from special assessments.

By proper pleading appellant sought recovery of a personal judgment against appellee Lucas for the amount of the paving certificate, which included the cost of the paving and charged 7 per cent. interest thereon from September 21, 1925, and a reasonable attorney fee. It also sought a foreclosure of the lien alleged to have been fixed against Lucas' property as to the appellees. This lien was alleged to exist against the north and middle lots of the subdivision of the original lot No. 8. The defensive pleading raised the defensive issues herein discussed.

By appropriate assignments of error, appellant challenges the judgment of the court in denying to it a personal judgment against Lucas and a foreclosure of its alleged lien against Lucas and the other appellees. The assignments of error will not be separately discussed.

■ At the time of the passage of the original resolution, original lot No. 8 in this addition to the city of Dallas had been subdivided into three lots, and only one of them, the north subdivision lot, abutted on Seventh street. Under the terms of the city charter, only the property abutting on a street to be improved can be charged with a lien for the improvement, and only the owner of property that abuts on the street can be charged with personal liability. The middle and south subdivision lots did not abut on Seventh street, were separately owned at this time and this ownership evidenced by separate deeds, each giving the metes and bounds of the lots conveyed. We therefore hold in no event could this middle lot be charged with the alleged lien.

At the time of the passage of the original resolution, February 23, 1924, this north lot was owned by Mrs. Lucas as her separate property and was the homestead of the family. At the time of the passage of the ordinance on September 21, 1925, this lot was owned by appellee Lucas, who, by virtue of the decree of' divorce, had the legal status of a single man and was not entitled to claim a homestead exemption in this property. Bahn v. Starcke, 89 Tex. 203, 34 S. W. 103, 59 Am. St. Rep. 40; Sykes v. Speer (Tex. Civ. App.) 112 S. W. 425. It is therefore apparent that at the date of the passage of the original resolution no lien could be fixed upon this lot because of its use as a homestead, but because of the changed conditions as to homestead rights at the date of the passage of the ordinance there was no exemption to forbid the fixing of a lien. It is certain that, at the date of the passage of the original resolution, no personal liability for the cost of this paving could be fixed against Lucas, for on that date he was not the owner of this lot. However, on the date of the passage of the ordinance, he had become the owner of the lot in question and subject to personal liability for street improvement in front of such lot. Manifestly, then, the first matter for determination is: When did the lien become effective, and when did the personal liability of the owner of abutting property become effective? This must be answered from a construction of the above-quoted provisions of the city charter, which authorize both the creation of the lien and the personal liability.

■ If the provisions of the city charter, creating a lien for street improvements, do not specifically name the time the lien is to become effective, it has been held that in such case the law implies the effectiveness of the lien on the date of the passage of a city ordinance, which declares the specific amount assessed against each piece of abutting property, and which fixes the personal liability of the owner of the property. Johnson v. City of Fort Worth (Tex. Com. App.) 299 S. W. 883. If, however, the city charter does specifically designate the time the lien created shall become effective, then such designated time must be taken as the time on which the lien becomes effective.

The city charter of the city of Dallas specifically declares that "the lien of such assessments shall revert back and take effect as of the date of the original resolution ordering the improvement, and the passage of such resolution shall operate as notice of such lien to all persons." This language of the charter is plain and unmistakable. The law wrote it into the city ordinance declaring the lien, and thereby caused the lien to take effect' against the abutting property of date February 23, 1924, the date of the passage of the original resolution. The naming of such date for the effectiveness of the lien created is based on the exercise of sound discretion. The condition of the abutting property on any street in reference to exemption from liens necessarily constitutes an important element for consideration by the governing body of a city, in determining whether a street shall be paved. The amount of homestead property abutting on said street, against which no lien can be created, must be considered before the passage of the resolution declaring the paving of a street. If this condition is such that is favorable for street improvement at the time of the passage of

the resolution, the status of the property in this respect might be radically changed before the passage of the ordinance declaring the lien, and so, in order to maintain the same status of the property in reference to exemption, the city of Dallas has provided in its charter that the lien created shall be of the date of the passage of the original resolution.

█ It seems clear to us that if, at the date the lien is to become effective, the property sought to be charged is not subject to the lien because of the homestead exemption, then no lien is created, and none can thereafter come into existence. Willis v. Mike, 76 Tex. 82, 13 S.'W. 58; Mayers .v. Paxton, 78 Tex. 199, 14 S. W. 568; Inge v. Cain, 65 Tex. 75; Hays v. Hays, 66 Tex. 606, 1 S. W. 895; Marks v. Bell, 10 Tex. Civ. App. 587, 31 S. W. 699.

Under the principles announced by the above authorities, which refer to attachment and contract liens, and hold that, if at the date the attachment was levied, or at the date the lien was attempted to be fixed by contract, the property sought to be subjected to the lien was exempt therefrom because it was a homestead, the subsequent abandonment of the homestead does not render the lien effective, even though such abandonment occurred before the trial of the case to foreclose the alleged lien. We do not believe the language of the city charter of Dallas, authorizing the creation of a lien for street improvement, is susceptible of the construction that the passage of the city ordinance, declaring a lien against abutting property owners, effective of the prior date of the passage of the original resolution, becomes a continual threat against such property, capable of being brought into existence on any future date that a change in the status of the property would render it subject to a lien. We hold that, as the property was exempt on the date designated for the lien to become effective, no lien was created, and, there being no lien created, there was nothing that could subsequently bring a lien into existence, even though the exemption status of the property ceased.

█ The charter of the city of Dallas has just as definitely fixed the date when the personal liability of the owner of abutting property shall become effective. The charter declares that "the person or persons who own property on the date of any ordinance providing for the assessment thereof shall be severally and personally liable for their respective portions of said assessments." On the date thus declared appellee Lucas was the owner of this property, and under the above-quoted provision a personal liability against him for the cost of the pavement in front of his property was fixed. We therefore hold that the court erred in not entering a personal judgment against Lucas for the cost of the pavement, together with 7 per cent. interest from September 21, 1925, and for the additional sum of $150 as attorney fee, the amount agreed upon between the parties as reasonable.

This disposition of the case renders it unnecessary to discuss specifically the assignments of error against the prior lienholders, and against the owner of the middle lot, who are the other appellees in this case. It follows that the judgment, in so far as it denies a foreclosure of the alleged lien and in so far as it is in favor of the appellees, other than W. J. Lucas, must be affirmed, but that the portion of the judgment, denying appellant a personal judgment against W. J. Lucas, must be reversed, and here rendered in favor of appellant for the sum of $578.72, with interest at the rate of 7 per cent. per annum from September 21, 1925, and for the additional sum of $150 as attorney fee, with interest on said sum at the rate of 6 per cent. per annum from September 24, 1928, the date of the judgment in the lower court.

Affirmed in part; reversed and rendered in part.

### On Motion for Rehearing.

LOONEY, J. █ Appellee Lucas contends that no personal judgment should have been rendered against him, because the provision of the city charter imposing personal liability for the total cost of the street improvement is inconsistent with a general law of the state on the subject; that is, with chapter 9. title 28, R. S. 1925, which provides that in no event shall more than three-fourths of the costs of such improvement, except the curbs and sidewalks, be assessed against either the property or the owner. If it be true that the charter of the city of Dallas, in the respect mentioned, conflicts with a general law of the state, to that extent the charter is invalid and must give way. Section 5 of article 11 of the Constitution, the "home rule" provision (under which the city of Dallas exercises municipal powers), provides that no charter or ordinance adopted by any city, of the class mentioned, shall contain any provision inconsistent with the Constitution, or any general law enacted by the Legislature.

The meaning of this provision was stated by Judge Powell, of the Commission, in City of Beaumont v. Fall, 116 Tex. 314, 324, 291 S. W. 202, 205, as follows: "In a word, as long as the state does not, in its Constitution or by general statute cover any field of the activity of the cities of this state, any given city is at liberty to act for itself. But, when the state itself steps in and makes a general law and applies such law to all cities of a certain class, then we submit that no city of the same class is authorized, under our Constitution, to enact contrary legislation. * * *"

Without determining whether a conflict really exists between the general law in ques-

tion and the charter of the city of Dallas, we take up a more pertinent question; that is, whether the general statute was ever operative in said city. If not, the question of inconsistency is academic. Article 1086, chapter 9, title 28, R. S. 1925, contains this provision: "Towns, cities and villages, incorporated under either general or special law, which shall accept the benefits of this chapter as herein provided, shall have power to improve any highway within their limits. * * *"

In view of this, the statute in question could not have become the law of any city, of the class mentioned, without its acceptance by said city, and as the city of Dallas has never accepted the benefits of the chapter the alleged conflict could not have arisen. However, if the city had accepted, still its charter provisions would control, in the event of a conflict; this by virtue of article 1105, as follows: "The provisions of articles 1086 to 1098, both inclusive, and article 1104 and of resolutions or ordinances passed pursuant thereto shall be cumulative of and in addition to existing laws pertaining to the making of such improvements. In any case in which a conflict may exist or arise between the provision of said articles and the provisions of any law granting a special charter to any city in this state, the provisions of such special charter shall control." Also see Childress v. Carwile (Tex. Com. App.) 235 S. W. 543. We therefore overrule this contention.

Amicus curiæ suggests that the court erred in holding valid the provision of the charter of the city of Dallas, reading, "The lien of such assessment shall revert back and take effect as of the date of the original resolution ordering the improvement," for the reason that the same is inconsistent and conflicts with a general law, to wit, chapter 9, title 28, R. S. 1925, and is prohibited by section 56 of article 3 of the Constitution.

We have just discussed an alleged conflict between the city charter and the statute in question, and, for the reasons stated, determine the matter contrary to this contention.

■ The further suggestion of amicus curiæ is that this provision of the city charter is a local or special law that authorizes the creation and extension of liens, and that section 56 of article 3 of the Constitution was violated in the manner of its enactment. The pertinent provisions of this section of the Constitution read: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: The creation, extension or impairing of liens; * * * and in all other cases where a general law can be made applicable, no local or special law shall be enacted."

The charter of the city of Dallas, granted by special act in 1907, was authorized by section 5, article 11, of the Constitution, which at that time permitted the Legislature to grant or amend charters of cities of more than 5,000 inhabitants by special acts. In 1912 this section of the Constitution was amended, and is now known as the "home rule" provision. Cities adopting charters or amendments to charters thereunder are given exclusive dominion, control, and jurisdiction over all public streets, and authority to provide for public improvements, such as paving streets, etc., and to charge the costs of such improvements against abutting property, by fixing a lien against the same and a personal charge against the owner, according to an assessment specially levied in an amount not exceeding the special benefit any such property receives in enhanced value by reason of the improvement, etc. See article 1175, subdivision 16, R. S. 1925.

As authorized by the "home rule" amendment, and the enabling act passed thereunder, the city of Dallas, by an amendment to its charter, enacted the paving law, of which the provision under review is a part. The "home rule" amendment stripped the Legislature of the power theretofore possessed to grant or amend charters of cities of 5,000 inhabitants, and vested the same in said cities, to be exercised by a majority vote of their qualified voters, and this power, in the cities, is exclusive. Le Gois v. State, 80 Tex. Cr. R. 356, 190 S. W. 724, Vincent v. State (Tex. Com. App.) 235 S. W. 1084. For these reasons, we disagree with the suggestion of amicus curiæ, and hold that the city of Dallas was not forbidden by any provision of section 56, article 3, of the Constitution to adopt the charter provision under discussion.

Appellant, Smith Bros., Inc., seeks rehearing on the ground that the court erred in refusing to recognize its right to a lien on the abutting lot for the value of the improvement. On this issue a majority of the court adheres to the reasons stated in the original opinion, for refusing to recognize the existence of a lien in favor of appellant; therefore the motion is overruled. The writer, however, dissents from this latter view for reasons stated below.

All motions for rehearing are overruled.

## Dissenting Opinion.

I agreed to the judgment heretofore rendered, entertaining, however, a serious doubt as to the correctness of the feature of the decision that denied appellant, Smith Bros., Inc., a lien upon the abutting lot. On motion for rehearing, I have given the question a more careful consideration, and am now convinced that that part of the decision is error.

As disclosed in the original opinion, the charter of the city of Dallas provides that "The lien of such assessment shall revert back and take effect as of the date of the original resolution ordering the improvement

and the passage of such resolution shall operate as notice of such liens to all persons. * * * "

The construction given this provision of the charter, adhered to by the majority, is that the lien became effective at the time of the passage of the original resolution, and on no other date, and, as the lot in question was at that time the homestead of the owner, no lien could attach, although at the time the improvement was completed and accepted by the city, and the final ordinance levying the assessment was passed, the property had changed ownership, was no longer a homestead, and there then existed no legal reason why the lien could not have attached. That this is the meaning of the holding is shown by the following excerpt from the original opinion, to wit: "We hold that, as the property was exempt on the date designated for the lien to become effective, no lien was created and there being no lien created, there was nothing that could subsequently bring a lien into existence, even though the exemption status of the property ceased."

The events and dates involved on this issue are these: On January 23, 1924, the board of commissioners of the city of Dallas passed the original resolution ordering the street improvement; the city engineer thereupon prepared specifications, these were approved by the board, and bids for the work solicited by advertisement, and the contract was let to appellant, Smith Bros., Inc. On November 11, 1924, the city engineer filed with the board a list of all owners of property upon the street, description of the property, total costs of the improvement, cost per front foot, and as to each property owner. This statement was approved by the board, a resolution was passed determining the necessity for assessing a part of the costs of the improvement against property owners and their property, and setting a time for hearing owners as to benefits, errors, invalidity in proceedings, or other matters connected with the improvement. After due notice, the hearing convened December 1, 1924, and continued from day to day until February 2, 1925. At the hearing appellee Lucas appeared and objected to the imposition of any burden for the improvement against the property in question. During the time of these proceedings, the lot in question belonged to Mrs. Mae E. Lucas, wife of appellee Lucas, in her own separate right, and was the homestead of the family, composed of Mr. and Mrs. Lucas and three minor children of Mrs. Lucas by a former marriage. On February 20, 1925, Lucas and wife were legally divorced, and on the day following Lucas purchased the lot in question from his divorced wife, and immediately moved into and has since occupied the same, but it had lost its status as a homestead at the time of final assessment. Between February 2, 1925, the conclusion of

the hearing, and September 21, 1925, the date of the passage of the final ordinance, the ownership of the property and its status were changed as above stated, the work of improvement was completed and accepted, the assessment levied, and certificates of special assessments issued to the contractor.

This situation, according to the reasoning of the majority, assimilates this case to those where attempts were made to fix attachment and contract liens on homesteads. In the latter cases it was held that if, at the date the lien was to become effective, the property sought to be charged was homestead in character, no lien was created, and that none could thereafter come into existence. The holding in this class of cases is based on the following provision found in section 50, article 16, of the Constitution, to wit: " * * * No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided. * * * "

The reason for the rule was reduced to a short phrase by Judge Robertson, in Inge & Boring v. Cain, 65 Tex. 75, 80, as follows: "We are of opinion that the clause quoted from the Constitution of 1876 renders all liens upon the homestead, not expressly excepted, absolutely void, and that they are not vitalized by the divestiture of the homestead character.". This holding was followed in Hays v. Hays, 66 Tex. 606, 1 S. W. 895; Willis v. Mike, 76 Tex. 82, 84, 13 S. W. 58; Mayers v. Paxton, 78 Tex. 196, 199, 14 S. W. 568.

I submit, however, that the rule announced in these cases is not applicable here; that this case should be assimilated to and ruled by the doctrine announced in cases involving judgment liens. The leading case on this subject is Marks v. Bell, 10 Tex. Civ. App. 587, 591, 31 S. W. 699, 701, decided by this court. In the course of the opinion Judge Finley said:

"The levy of an execution or attachment upon the homestead is absolutely void, and the fact that the property afterwards ceases to be exempt does not give life and validity to such levy. It is also true that any contract for a lien upon the homestead, unless within the exceptions of the Constitution, is utterly void; no subsequent abandonment of the homestead will give validity to the contract, and, the contract being wholly void, no lien can arise thereunder. Does the fact that the property is exempt as the homestead when the judgment is recorded prevent the judgment lien from attaching when the property ceases to be the homestead and remains the property of the judgment debtor? The recording of a judgment is not the seizure of specific property for the purpose of applying it to the payment of a debt, as is the case in the levy of an execution or attachment.

It is a statutory notice to the world that the defendant in the judgment owes the debt to the plaintiff, and by statute this judgment, when properly recorded, becomes a charge upon all real property, subject to execution, situated in the county wherein the judgment is recorded, and which is owned by the judgment debtor at the time the judgment is recorded, or which he may thereafter acquire. It is certain that if the judgment had been recorded after the abandonment of the homestead, and when it was subject to execution, the judgment lien would have attached. As the recording of the judgment was valid in all respects in the first instance, and not a specific seizure of the homestead property, how could a record thereof at a later date give greater force and effect to it? To ask the question announces the answer, that the original record of the judgment would be of equal force. Under our statute, a recorded judgment hangs over the defendant, and by virtue of it a lien attaches to all his real property, in the county where the judgment is recorded, which he owns at the time the judgment is recorded, or acquires thereafter, and which is subject to execution, or becomes subject to execution during the life of the judgment record. The lien does not relate to the date of the recording of the judgment, but to the time when the property becomes subject to the lien."

To the same effect, see Glasscock v. Stringer (Tex. Civ. App.) 33 S. W. 677; Bradley v. Janssen (Tex. Civ. App.) 93 S. W. 506; Harrison v. First National Bank (Tex. Civ. App.) 224 S. W. 269, 276; Id. (Tex. Com. App.) 238 S. W. 209.

In the Harrison-Bank Case (Tex. Civ. App.) 224 S. W. 276, the court used this language: "It thus appears that by the decisions of this state it seems to be now well settled that a judgment lien does not come within the operation of section 50, article 16, of the Constitution of our state, which provided that 'no mortgage, trust deed, or other lien on the homestead shall ever be valid,' with certain stated exceptions not applicable here." From these holdings the rule is deducible that the lien of an abstracted judgment is not within the operation of section 50, article 16, of the Constitution in the same sense as are attachment and contract liens.

I therefore submit that for the same reason the lien here involved is not within its meaning, for, like the judgment lien, the lien of the assessment results neither from levy nor contract, but is altogether the creature of law. While a contract between the city and the contractor formed the basis for the improvement, the owner's connection therewith was involuntary and purely constructive.

Aside from this, however, there is still another reason why, in my opinion, appellant's right to a lien on the abutting lot should be upheld. The provision of the charter that "the lien of the assessment shall revert back and take effect as of the date of the original resolution," is a fiction, pure and simple. In truth, neither the debt against the owner nor the lien against the abutting property could have had a legal existence until the completion of the improvement; hence the only purpose to be served by this relating back provision of the charter was one of notice to those subsequently dealing with the property, to the effect that, on completion and acceptance of the improvement, a personal liability, for the amount of its costs, would be assessed against whoever at that time might be the owner of the property, and that a lien would be fixed thereon and made to relate back to and attach as of the date of the original resolution.

In some jurisdictions similar contracts for public improvement have been given that meaning, even in the absence of a "relating back" provision, such as we have here. Hester v. Thompson, 217 Mass. 422, 105 N. E. 631, Gomeringer v. McAbee, 129 Md. 557, 99 A. 787. The doctrine of relation, whether by enactment, as in the charter of Dallas, or by implication, as in the cases cited above, is employed only when necessary to prevent injustice that may result from happenings between the real and fictitious dates of the major event.

The doctrine was defined by the Supreme Court of the United States, in Gibson v. Chouteau, 13 Wall. 92–100, 20 L. Ed. 534, 537, as follows: "By the doctrine of relation is meant that principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding which consummates the conveyance is held for certain purposes to take effect by relation as of the day when the first proceeding was had."

In Peyton v. Desmond, 129 F. 1, 11–13, Judge Van Devanter, for the Circuit Court of Appeals, after stating that the doctrine of relation was of equitable origin, invoked to promote justice and give effect to the lawful intention of parties (page 13), said: "The principles underlying and supporting the doctrine of relation are such that it may be as readily invoked to remedy or correct a loss such as is here disclosed, occurring while the claim was being perfected, as to prevent the loss of the entire right or title through an intervening claim." Also see Krakow v. Willie, 125 Wis. 284, 103 N. W. 1121, 1123, 4 Ann. Cas. 1016; Canfield v. Jack, 78 Okl. 127, 188 P. 1040, 1043; Knapp v. Alexander, 237 U. S. 162, 35 S. Ct. 515, 59 L. Ed. 894, 898.

Thus we see that the doctrine is simply a fiction of equitable origin, employed only when necessary to prevent wrong or injustice. Under the facts with which we are now dealing, to permit Lucas to retain the lot, enhanced in value, relieved of any charge for

the improvement, would in effect subordinate truth to fiction. In no event, whether exempt or not, could the lien have attached to the lot on the date of the original resolution, because at that time it was inchoate. However, when Lucas purchased the property, it lost its status as a homestead and, the lien being consummate, there existed no impediment whatever to its complete operation at the time the assessment was levied.

The cost of such improvements is regarded by the courts, a special charge against abutting property without reference to its ownership. This doctrine is announced in 44 C. J. 802, § 3407, as follows: "The lien of a special assessment is not against the owner of property or his right of possession, but it is against and attaches to the property itself without reference to the person in whom the title is actually vested. * * *"

The reason for the rule is that the abutting property is enhanced in value by the improvement, as this alone furnishes the legal justification for the assessment. That these special assessments are to be continuing charges against the abutting property benefited by the improvement, from the date of the assessment, is evidenced by the provision for reassessment in subdivision (m) of article 10 of the charter, as follows: "Whenever any error or mistake shall occur in any proceeding provided for by this act, it shall be the duty of the board of commissioners to correct the same and whenever it shall have been determined that any assessment against any property or its owners, or lien against such property or claim of personal liability fixed or attempted to be fixed under the terms hereof, is, for any reason, invalid, unlawful, or unenforceable, then it shall be the duty of the board of commissioners to reassess against such property and the owners thereof such proportion of the cost of making such improvements as may be lawful and to fix a lien against said property and declare the personal liability of the owner thereof," etc.

This reassessment may be made at any time within five years from the date of the original assessment, and proceeds on the evident idea that the lien is brought into actual existence by the assessment as limitation begins to run from that date.

This idea seems to have been the controlling principle in similar cases adjudicated in other states. The case of Commissioners, etc., v. Inhabitants, etc., 40 N. J. Eq. 27, involved the validity of a reassessment to cure defects in a prior invalid one for the costs of a public improvement. After the invalid assessment, the property was sold and the rights of a mortgagee attached before the Legislature passed an act authorizing the reassessment. In the course of the opinion, the Supreme Court of New Jersey cited the case of Doyle v. Newark, 34 N. J. Law, 236, and then said: "That case established, also, the principle that where the Legislature authorizes a reassessment for the cost of a municipal improvement in the place of one that has been set aside, the new proceedings are to be regarded so far as the rights of persons interested in the land are concerned, as an original assessment, precisely as if there had been no previous one, and hence that purchasers or mortgagees, after the former assessment was set aside, and before the second one was made, are entitled to no immunity on that ground." To the same effect, see Comley v. American Standard, etc., 130 Ky. 262, 113 S. W. 125.

The idea is further strengthened by the holdings of courts to the effect that cases of this nature are actions in rem. On this point the Supreme Court of Louisiana, in Rosetta, etc., v. Jollisaint, 51 La. Ann. 804, 809, 25 So. 477, 479, said: "On this theory, we feel safe in holding that the lien and right of pledge resulting from such assessments of necessity attach to the property of the abutting proprietor, without reference to the person in whom the title is vested, and that proceedings taken for their enforcement are proceedings in rem, notwithstanding the owner is cited for the purpose of carrying same into effect. If this were not so, the enactment of such laws would be a vain and fruitless proceeding." Also see Page v. W. W. Chase Co., by the Supreme Court of California, 145 Cal. 578, 79 P. 278.

For these reasons, I believe Smith Bros., Inc., have a lien on the abutting lot for the costs of the improvement, that its motion for rehearing should have been granted, and our former judgment modified to the extent of decreeing foreclosure of the lien.